IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BMO BANK N.A., | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Complaint |
| | ) | |
| LEADENHALL CAPITAL PARTNERS LLP, | ) | |
| LEADENHALL LIFE SMA III ICAV, and | ) | |
| BRICKELL INSURANCE HOLDINGS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff BMO Bank N.A. f/k/a BMO Harris Bank N.A. ("*BMO*" or "*Plaintiff*"), by and through its attorneys, Chapman and Cutler LLP, for its Complaint against the defendant(s) named below, respectfully alleges as follows:

### THE PARTIES

1. Plaintiff BMO is a national banking association headquartered in Chicago, Illinois.

2. Defendant Leadenhall Capital Partners LLP ("*Leadenhall Capital*") is an asset management company. Leadenhall Capital is organized as a limited liability partnership under the laws of England and maintains its principal place of business in London, England.

3. Defendant Leadenhall Life SMA III ICAV ("*Leadenhall Life*" and together with Leadenhall Capital the "*Leadenhall Defendants*") is a collective asset-management vehicle with its headquarters in Dublin, Ireland.

4. Brickell Insurance Holdings, LLC (the "*Borrower*") is a Delaware limited liability company with its principal place of business in Florida.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this dispute under 28 U.S.C. § 1332 because the parties are entirely diverse.

6. Based upon publicly available information, Leadenhall Capital is made up of several partners: John Wells, Luca Albertini, Lorenzo Volpi, Craig Gillespie, Tom Spreutels, Phil Kane, Chris Learmonth, Kelvin Granger, and Kunal Shah are each individuals and citizens of the United Kingdom; Ben Adolph is an individual citizen of Bermuda; and Mitsui Sumitomo Insurance Company Limited is a Japanese corporation with its principal place of business in Japan.

7. Based upon publicly available information, the Brickell Insurance Holdings, LLC is made up of five partners: MTCP Capital LLC ("*MTCP*"), 777 Partners LLC ("*777 Partners*"), and three Ireland-incorporated funds.

8. 777 Partners has one member, Sutton Park Acquisition LLC, which is organized under the laws of Delaware and has its principal place of business in Florida. Sutton Park Acquisition LLC has two member JARM Capital LLC and MTCP.

9. In turn, MTCP's sole member is Steven W. Pasco, himself a resident of Florida and JARM Capital LLC's sole member is Josh Wander, also a resident of Florida.

10. Based on publicly available information, Leadenhall Life is a citizen of Ireland.

11. Pursuant to Section 27 of Intercreditor Agreement (defined below) at issue in this case:

> "EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN THE BOROUGH OF MANHATTAN IN NEW YORK AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK . . ."

Accordingly, venue is proper in this district, and the Defendants have submitted themselves to the jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

*The Agreements*

12. Beginning on or about June 30, 2022, BMO and Defendants entered into a series of contractual agreements whereby BMO and the Leadenhall Defendants extended credit and financing arrangements to the Borrower.

13. Among the executed agreements were:

   a. a Credit Agreement dated June 30, 2022 (as amended, restated, supplemented or otherwise modified the "*Senior Credit Agreement*") between BMO, as administrative agent, the certain senior lenders party thereto (the "*Senior Lenders*"), and the Borrower, a true and correct copy of which is attached hereto as Exhibit A; and

   b. a Note Purchase Agreement dated June 30, 2022 (as amended, restated, supplemented or otherwise modified the "*Note Agreement*") between (1) the holders of debt with a subordinated interest to that of BMO and the Senior Lenders (each a "*Subordinated Holder*" and together with the Leadenhall Defendants, the "*Subordinated Holders*"), (2) Leadenhall Capital, as administrative agent for the Subordinated Holders, (3) Leadenhall Life, as the collateral agent for the Subordinated Holders, and (4) the Borrower. A true and correct copy of the original Note Agreement is attached hereto as Exhibit B.

14. Additionally, among the documents executed was a Subordination and Intercreditor Agreement, dated as of June 30, 2022 (as amended, restated, supplemented or otherwise modified, the "*Intercreditor Agreement*") by and among BMO, the Leadenhall Defendants, the Borrower, 777 Partners LLC, a Delaware limited liability company ("*777 Partners*"), and MTCP LLC, a Florida limited liability company ("*MTCP*"). A true and correct copy of the original

Intercreditor Agreement is attached hereto as Exhibit C.

*The Intercreditor Agreement*

15. The terms of the Senior Credit Agreement and the Note Agreement required that the parties enter into the Intercreditor Agreement as a condition precedent to the effectiveness of the Senior Credit and Note Agreements.

16. The Intercreditor Agreement delineates the interests, rights, and obligations among the Borrower and the various creditors including BMO, as senior creditor, and the Leadenhall Defendants as subordinated creditors.

17. Specifically, Section 1 of the Intercreditor Agreement provides that the indebtedness owed to the Subordinated Holders (here, the Leadenhall Defendants) under the Note Agreement (the "*Subordinated Indebtedness*") is subordinated in right and time until the final payment of the debt owed to the Senior Lenders (including BMO) under the Senior Credit Agreement (the "*Senior Indebtedness*").

18. Further, pursuant to Section 6 of the Intercreditor Agreement, Leadenhall Defendants agreed not to accept on their own behalf or on behalf of any Subordinated Holder, any payment or distribution with respect to the Subordinated Indebtedness unless expressly permitted by the Intercreditor Agreement.  For example, Section 6 permitted the Leadenhall Defendants to accept certain regularly scheduled payments of cash interest on the Subordinated Indebtedness, so long as no event of default had occurred or was continuing under the Senior Credit Agreement (the "*Permitted Payments*").

19. Section 13 of the Intercreditor Agreement required that any payments made to the Defendants in relation to the Subordinated Indebtedness in contravention of the Intercreditor Agreement were to be held in trust, not commingled with any other assets, and promptly paid over and delivered to BMO.

*The Borrower's Default*

20. Following the execution of the agreements, the Borrower defaulted under both BMO's Senior Credit Agreement and the Note Purchase Agreement (the "*Specified Events of Default*").

21. Despite the Specified Events of Default, cash payments in an aggregate amount of $3,963,915.03 (collectively, the "*Specified Payments*") were made to, and accepted by, the Leadenhall Defendants with respect to the Subordinated Indebtedness in violation of the plain language of Section 6 of Intercreditor Agreement.

22. On September 27, 2023, BMO and the Borrower reached an agreement on an amendment to the Senior Credit Agreement and a forbearance agreement (the "*Sr. Forbearance Agreement*"), a true and correct copy of which is attached hereto as Exhibit D.

23. BMO and the Borrower amended the Sr. Forbearance Agreement shortly thereafter, on October 6, 2023 (the "*Sr. Forbearance Amendment*"), a true and correct copy of which is attached hereto as Exhibit E.

24. Also on October 6, 2023, the Leadenhall Defendants and the Borrower executed an amendment to the Note Agreement and included a forbearance agreement (the "*Jr. Forbearance Agreement*" and collectively with the Sr. Forbearance Agreement (as amended), the "*Forbearance Agreements*").  A true and correct copy of the Jr. Forbearance Agreement is attached hereto as Exhibit F.

25. Pursuant to the terms of each of the Forbearance Agreements, BMO and the Leadenhall Defendants consented to forbear on exercising their rights and remedies under their respective loan documents for a period of time to allow the Borrower time to sell substantially all of the assets belonging to one of its subsidiaries, Merit Life Insurance Co. ("*Merit*"), pursuant to the terms of a specific purchase agreement (the "*Merit Purchase Agreement*") which was tendered to BMO.

26. The proceeds of the sale (the "*Merit Sale*") were to be distributed and applied with portions going to both the Senior Indebtedness and the Subordinated Indebtedness pursuant to an agreed upon waterfall if certain conditions were met. *See* Ex. E.

27. The Merit Sale was to be completed on or before March 27, 2024 (the "*Stated Termination Date*"). If the Merit Sale did not take place by the Stated Termination Date, the Forbearance Agreements would terminate, and BMO and the Leadenhall Defendants would be free to exercise their respective rights and remedies.

28. The Merit Sale did not occur as required on or before the Stated Termination Date. The Borrower did not request an extension to complete the Merit Sale (as permitted under the applicable loan documents) and instead, the Borrower terminated the Merit Purchase Agreement previously tendered to BMO.

29. Accordingly, the Forbearance Agreements terminated pursuant to their terms, and BMO was free to exercise its rights pursuant to the Senior Credit Agreement as amended.

*The Leadenhall Defendants Default in Relation to the Specified Payments.*

30. Prior to the execution of any of the Forbearance Agreements, BMO learned of the Leadenhall Defendants' acceptance of the Specified Payments despite the Specified Events of Default in violation of the Intercreditor Agreement. Immediately upon learning of the violation, on August 21, 2023, BMO delivered a Notice of Default and Reservation of Rights to the Leadenhall Defendants, a true and correct copy of which is attached hereto as Exhibit G.

31. On October 6, 2023, simultaneously with the execution of the Forbearance Agreements, BMO and the Leadenhall Defendants signed a letter agreement (the "*Letter Agreement*") regarding the disposition of the funds from the Specified Payments (the "*Net Cash Proceeds*"). A true and correct copy of the Letter Agreement is attached hereto as Exhibit H.

32. In the Letter Agreement, the Leadenhall Defendants specifically admitted that the

Specified Payments were made and accepted in violation of the Intercreditor Agreement. *See* Ex. H.

33. Nonetheless, given the potential Merit Sale, BMO did not demand immediate turnover of the Specified Payments but instead agreed that the Specified Payments could be held by Defendant Leadenhall Capital until the Stated Termination Date, wherein Borrower was required to close the Merit Sale.

34. In addition, the Letter Agreement contemplated a limited conditional waiver of BMO's rights and remedies under the Intercreditor Agreement solely with respect to compelling the turnover of the Specified Payments subject to the occurrence of the following conditions precedent: (a) the Borrower consummated the Merit Sale on substantially the same terms set forth in the Merit Sale Purchase Agreement by March 27, 2024, with the proceeds of the Merit Sale being distributed as required by the Forbearance Agreements; or (b) the Specified Events of Default were waived in writing in accordance with the terms of the applicable agreements.

35. The Merit Sale did not occur as required on or before the Stated Termination Date. The Borrowers did not request an extension to complete the Merit Sale (as permitted under the applicable loan documents) and instead, the Borrowers terminated the applicable Merit Purchase Agreement previously tendered to BMO.

36. Accordingly, BMO's agreement to not require turnover of the Specified Payments expired by its terms pursuant to the Letter Agreement.

37. In addition, the conditions for waiver of BMO's rights as to the Specified Payments did not occur, as (1) the Merit Sale was not consummated before the Stated Termination Date or on terms substantially the same as the applicable Merit Purchase Agreement; and (2) to date, the Specified Events of Default have not been waived.

*Eventual Sale of Merit and BMO's Demand for Remittance of the Net Cash Proceeds*

38. The Borrower later closed a sale of Merit's assets pursuant to a subsequently executed purchase agreement in July 2024.

39. On July 30, 2024, BMO sent a letter to the Leadenhall Defendants noting that the conditions precedent for the waiver of its rights in regard to the Specified Payments as contemplated by the Letter Agreement had not occurred. BMO informed the Leadenhall Defendants that it intended to enforce its rights and demanded remittance of the Specified Payments to BMO. A true and correct copy of the July 30 Letter is attached hereto as Exhibit I.

40. To date, the Leadenhall Defendants have failed to deliver the Specified Payments as required under the Intercreditor Agreement and the Letter Agreement.

## COUNT I
### BREACH OF CONTRACT
### (AS TO THE LEADENHALL DEFENDANTS)

41. BMO fully incorporates Paragraphs 1–40 as if stated in full herein.

42. BMO has performed all of its duties under the Senior Credit Agreement, Intercreditor Agreement, the Forbearance Agreements, and the Letter Agreement.

43. Pursuant to the Intercreditor Agreement, the Specified Payments were to be remitted to, or held in trust for, BMO.

44. The conditions for any waiver of BMO's rights under the Intercreditor Agreement, as acknowledged by the Leadenhall Defendants pursuant to the Letter Agreement, have not been and cannot be satisfied. Specifically, the standstill period set forth in the Forbearance Agreements expired on the Stated Termination Date of March 27, 2024. The Merit Sale was not consummated in that period, nor was it effectuated on terms substantially the same as those set forth in the Merit Purchase Agreement. Furthermore, the Specified Events of Default have not been waived.

45. BMO previously notified the Leadenhall Defendants of, and reserved its rights with

respect to, the failure of the conditions precedent for the waiver of its receipt of the Specified Payments, and has demanded payment and delivery of the Specified Payments under the terms of the Intercreditor Agreement and the Letter Agreement.

46. The Leadenhall Defendants have refused to comply with their contractual obligations under the Intercreditor Agreement and the Letter Agreement by virtue of their failure to deliver the Specified Payments to BMO.

47. The Leadenhall Defendants wrongfully retain possession of such funds in violation of the Intercreditor Agreement and the Letter Agreement.

48. As a result of the Leadenhall Defendants' breach, BMO has been harmed in an amount not less than [$3,963,915.03], with BMO's ultimate damages to be further proven up at trial.

## COUNT II
### BREACH OF CONTRACT
### (AS TO THE BORROWER)

49. BMO fully incorporates Paragraphs 1–40 as if stated in full herein.

50. BMO has performed all of its duties under the Senior Credit Agreement, Intercreditor Agreement, and the Sr. Forbearance Agreement.

51. Under the Intercreditor Agreement, the "Borrower agree[d] to pay the [BMO] on demand all expenses of every kind, including without limitation attorney's fees that the [BMO] and Senior Lenders incur in enforcing any of their rights against . . . Borrower, any other Company and/or the Subordinated Holders under this Agreement." *See* Ex. B. at § 18.

52. **[BMO has demanded payment of attorneys' fees incurred to date under the Intercreditor Agreement as well as assurances of payment of subsequent attorneys' fees incurred in regard to the same.]**

53. Borrower has refused to honor its contractual obligation to remit payment in satisfaction of BMO's request for attorneys' fees or to assure Borrower's future compliance with

the Intercreditor Agreement.

54. As a result of the Borrower's breach, BMO has been harmed in an amount to be further proven up at trial and continues to incur ongoing damages in an amount to be proven up at the conclusion of this matter.

**WHEREFORE**, BMO respectfully prays that this Court enter judgment in its favor and against the Leadenhall Defendants in the amount of $3,963,915.03, plus applicable pre- and post-judgment interest, together with contractual and common law fees and costs, and to enter judgment against the Borrower in an amount to be proven at trial in relation to Borrowers' contractual obligation to pay BMO's costs and fees (including attorney's fees), and as to each Defendant any such other and further relief as this Court deems just and reasonable.

                                          Respectfully submitted,

                                          BMO BANK N.A.

                                          By: /s/ Joseph Lombardo
                                                  One of Its Attorneys

Mia D'Andrea (PHV Pending)
Joseph Lombardo (NY Atty Bar No. 5447743)
CHAPMAN AND CUTLER LLP
320 South Canal Street
Chicago, Illinois 60606
(312) 845-3766
(312) 516-1907 (Fax)