# EXHIBIT C

EXECUTION VERSION

## SUBORDINATION AND INTERCREDITOR AGREEMENT

THIS SUBORDINATION AND INTERCREDITOR AGREEMENT dated as of June 30, 2022 (this "*Agreement*") is entered into by and among **BMO HARRIS BANK N.A.**, as Administrative Agent under the hereinafter described Senior Credit Agreement, **LEADENHALL CAPITAL PARTNERS LLP**, as agent for itself and any other investors party to the hereinafter described Subordinated Note Purchase Agreement (including any successors and permitted assigns, the "*Subordinated Administrative Agent*"), **LEADENHALL LIFE SMA III ICAV**, as second lien collateral agent under the hereinafter described Subordinated Note Purchase Agreement (including any successors and permitted assigns, the "*Subordinated Collateral Agent*"), each Subordinated Holder party hereto from time to time, Brickell Insurance Holdings LLC, a Delaware limited liability company ("*Borrower*"), 777 Partners LLC, a Delaware limited liability company ("*777 Partners*") and MTCP LLC, a Florida limited liability company ("*MTCP*").

## RECITALS

A. Borrower, the lenders party thereto and Senior Agent have entered into a Credit Agreement, dated as of the date hereof (as from time to time amended, modified, supplemented, extended, renewed, refinanced, or restated, the "*Senior Credit Agreement*"), together with the other Loan Documents (as defined in the Senior Credit Agreement), whereby the Senior Lenders have made and shall make available to Borrower certain loans, notes and other financial accommodations therein set forth. The obligations under the Senior Loan Documents are guaranteed by 777 Partners and secured by first priority liens in collateral of the Borrower, 777 Partners and MTCP as more fully set forth in the Senior Loan Documents.

B. 777 Partners, Subordinated Administrative Agent, Subordinated Collateral Agent and the noteholders party thereto have entered into a Subordinated Note Purchase Agreement, dated as of the date hereof (as from time to time amended, modified, supplemented, extended, renewed, refinanced, or restated to the extent permitted by the terms of this Agreement, the "*Subordinated Note Purchase Agreement*," and collectively with all guarantees and other documents or instruments which evidence, secure or relate to the indebtedness created by the Subordinated Note Purchase Agreement, in each case, as from time to time amended, modified, supplemented, extended, renewed, refinanced or restated to the extent permitted by the terms of this Agreement, shall be referred to collectively as the "*Subordinated Documents*").

C. As a condition of the financing accommodations under the Senior Loan Documents, the parties hereto are required to enter into this Agreement to establish the relative rights and priorities of the Senior Agent, Senior Lenders, Subordinated Agent and Subordinated Holders under the Senior Loan Documents and the Subordinated Documents.

D. Subordinated Agent and Subordinated Holders will benefit from the financing accommodations made by the Senior Lenders under the Senior Credit Agreement and the other Senior Loan Documents. The Subordinated Agent, Borrower, 777 Partners and MTCP desire to enter into this Agreement in order to induce the Senior Agent and Senior Lenders to enter into the Senior Credit Agreement. The Subordinated Agent acknowledges that the Senior

Agent and Senior Lenders would not enter into the Senior Loan Documents but for the execution of this Agreement.

In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

1. <u>Definitions</u>. Except as otherwise provided herein, all capitalized terms used in this Agreement shall have the meanings ascribed to such terms in the Senior Credit Agreement, *provided that* the following terms shall have the meanings set forth below:

"***777 Partners***" shall have the meaning set forth in the preamble hereof.

"***Agreement***" shall have the meaning set forth in the preamble hereof.

"***Bankruptcy Code***" means Title 11 of the United States Code (11 U.S.C. § 101 et. seq.) or any replacement or supplemental federal statute dealing with the bankruptcy of debtors.

"***Borrower***" shall have the meaning set forth in the preamble hereof.

"***Companies***" means Borrower, 777 Partners, MTCP and any guarantor of or Person that provides a guaranty or collateral for any Senior Indebtedness or Subordinated Indebtedness, currently existing or arising in the future.

"***Company Property***" means all assets, property and property rights, of any kind or nature, tangible or intangible, now or hereafter existing, in which Borrower or any other Company owns, asserts or maintains an interest.

"***Debt to Capital Ratio***" shall have the meaning set forth in the Subordinated Note Purchase Agreement.

"***Disposition***" shall have the meaning set forth in <u>Section 3(d)</u>.

"***Finally Paid***" or "***Final Payment***," when used in connection with the Senior Indebtedness, means (i) the full and indefeasible payment in cash of all of the Senior Indebtedness, and (iii) the irrevocable termination of all commitments to lend of the Senior Lenders under the Senior Loan Documents.

"***MTCP***" shall have the meaning set forth in the preamble hereof.

"***Pari Passu Collateral***" means any Company Property (other than the Senior Priority Collateral) with respect to which the Subordinated Agent has been granted a Lien to secure the Subordinated Indebtedness and the Senior Agent has not declined an identical Lien pursuant to <u>Section 3(f)</u>.

"***Permitted Payments***" means (a) so long as a Senior Default has not occurred and is continuing or would result therefrom, (i) regularly scheduled payments of cash interest on the Subordinated Indebtedness in accordance with the Subordinated Note Purchase Agreement as in

effect on the date hereof not to exceed 25% of the amount of accrued interest due thereon and (ii) solely during any period for which the Debt to Capital Ratio is less than or equal to 75%, voluntary prepayments of the Subordinated Indebtedness; *provided* that if any such voluntary prepayment is made, the Senior Indebtedness and the Subordinated Indebtedness shall be voluntarily prepaid concurrently, each in an equal amount, (b) any fees payable to the Subordinated Agent and the Subordinated Holders pursuant to any Subordinated Document as in effect on the date hereof, (c) reasonable out-of-pocket costs and expenses payable by 777 Partners to the Subordinated Holders pursuant to the terms of the Subordinated Documents as in effect on the date of this Agreement (other than any costs and expenses specified in clause (d) of this definition) and in an amount not to exceed $500,000 in any fiscal year of 777 Partners and (d) reasonable out-of-pocket costs and expenses of legal counsel and other professional advisors payable by 777 Partners to the Subordinated Holders pursuant to the terms of the Subordinated Documents as in effect on the date of this Agreement, in connection with any Subordinated Default or in connection with the enforcement of any of the Subordinated Documents (including all such costs and expenses incurred in connection with any proceeding under the United States Bankruptcy Code involving 777 Partners).

"***Proceeding***" means any voluntary or involuntary proceeding commenced by or against 777 Partners, MTCP, Borrower or any other Company under any provision of the Bankruptcy Code, or under any other bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions or any other marshaling of assets for creditors, extensions generally with its creditors, or proceedings seeking dissolution, winding up, receivership, reorganization, arrangement, or other similar relief.

"***Purchase Notice***" shall have the meaning set forth in <u>Section 19(e)</u>.

"***Purchase Option Triggering Event***" shall have the meaning set forth in <u>Section 19(e)</u>.

"***Required Senior Lenders***" means the "Required Lenders" as defined in the Senior Credit Agreement.

"***Senior Agent***" means BMO Harris Bank N.A., as agent for the Senior Lenders, or any other Person appointed by the holders of the Senior Indebtedness pursuant to the Credit Agreement as agent for purposes of the Senior Loan Documents and this Agreement, together with the successors and assigns of all of the foregoing.

"***Senior Credit Agreement***" shall have the meaning set forth in the recitals hereof.

"***Senior Default***" means any "Default" or "Event of Default" under the Senior Loan Documents or any condition or event that, after notice or lapse of time or both, would constitute such a Default or Event of Default if that condition or event were not cured or removed within any applicable grace or cure period set forth therein.

"***Senior Indebtedness***" means all obligations, liabilities and indebtedness of every nature of 777 Partners, MTCP, Borrower or any other Company from time to time owed to the Senior Agent or Senior Lenders under the Senior Loan Documents, including, without limitation, the principal amount of all debts, claims and indebtedness, accrued and unpaid interest and all

premium, fees, costs and expenses, whether primary, secondary, direct, contingent, fixed or otherwise, heretofore, now and from time to time hereafter owing, due or payable, whether before or after the filing of a Proceeding, together with (a) any indebtedness which refinances such principal, interest or other obligations and any amendments, modifications, renewals, supplements, restatements, refinancings, increases or extensions thereof and (b) any interest accruing thereon after the commencement of a Proceeding, without regard to whether or not such interest is allowed or allowable in any Proceeding. Senior Indebtedness shall be deemed to be outstanding until it is Finally Paid.

"*Senior Lenders*" means those financial institutions signatory (or the permitted assignees of such signatories) to the Senior Credit Agreement and, in addition, any lender or lenders providing or holding Senior Indebtedness from time to time created under the Senior Credit Agreement.

"*Senior Loan Documents*" means the Senior Credit Agreement, the other Loan Documents (as defined in the Senior Credit Agreement) and all other agreements, documents and instruments executed from time to time in connection therewith, in each case as from time to time renewed, extended, amended, supplemented, restated or modified and all agreements and instruments evidencing full or partial refundings or refinancings of the indebtedness thereunder.

"*Senior Priority Collateral*" means the equity interests in Borrower.

"*Shared Collateral*" means, collectively, the Senior Priority Collateral and the Pari Passu Collateral.

"*Specified Amendment*" means any amendment, supplement or modification of a Subordinated Document having the effect of (a) increasing the principal amount of the Subordinated Indebtedness other than as a result of a PIK Amount (as defined in the Subordinated Note Purchase Agreement) being added to the principal amount of the Subordinated Indebtedness in accordance with the Subordinated Note Purchase Agreement as in effect on the date hereof, (b) increasing the rate of interest applicable to the Subordinated Indebtedness (other than solely as a result of increases in the Term SOFR Reference Rate) to a per annum rate that is more than 2.00% per annum above such rate of interest in effect on the date hereof, (c) Borrower or any other Company providing any Liens securing the Subordinated Indebtedness except in accordance with Section 3(f), (d) any Subsidiary of Borrower providing any guaranty or becoming an obligor in respect of the Subordinated Indebtedness unless such Subsidiary becomes party to this Agreement as a Company hereunder, (e) any other Person (other than a Subsidiary of Borrower) providing any guaranty or becoming an obligor in respect of the Subordinated Indebtedness except if any such guaranty is provided for the pro rata benefit of the Subordinated Indebtedness and the Senior Indebtedness in accordance with the respective outstanding principal amounts thereof, (f) changing any date upon which any principal amount or interest on the Subordinated Indebtedness is due to a date that is earlier than as specified in the Subordinated Note Purchase Agreement in effect on the date hereof, (g) changing or adding any covenant or event of default in a manner that is more burdensome to 777 Partners, MTCP or any Company, unless such change or addition is in accordance with Section 14(c) and (h) subordinating the Subordinated Indebtedness to debt other than the Senior Indebtedness.

"*Subordinated Administrative Agent*" shall have the meaning set forth in the preamble hereof.

"*Subordinated Agent*" means the Subordinated Administrative Agent and the Subordinated Collateral Agent, either individually or collectively as the context permits.

"*Subordinated Collateral Agent*" shall have the meaning set forth in the preamble hereof.

"*Subordinated Default*" means any "Default" or "Event of Default" under the Subordinated Documents or any condition or event that, after notice or lapse of time or both, would constitute such a Default or Event of Default if that condition or event were not cured or removed within any applicable grace or cure period set forth therein.

"*Subordinated Documents*" shall have the meaning set forth in the recitals hereof.

"*Subordinated Enforcement Date*" means the date which is 180 days after the occurrence of both (a) an Event of Default (under and as defined in the Subordinated Note Purchase Agreement) and (b) the Subordinated Agent providing notice by email to the Senior Agent that (i) an Event of Default (under and as defined in the Subordinated Note Purchase Agreement) has occurred and is continuing and (ii) the Subordinated Indebtedness is currently due and payable in full (whether as a result of acceleration thereof or otherwise) in accordance with the terms of the Subordinated Documents; *provided* that the Subordinated Enforcement Date shall be stayed and shall not occur and shall be deemed not to have occurred (x) at any time the Senior Agent has commenced and is diligently pursuing any enforcement action with respect to the Senior Priority Collateral or (y) at any time 777 Partners, MTCP or any grantor which has granted a security interest in the Senior Priority Collateral is then a debtor under or with respect to (or otherwise subject to) any Proceeding.

"*Subordinated Indebtedness*" means all obligations, liabilities and indebtedness of every nature of 777 Partners, MTCP or any other Company from time to time owed to the Subordinated Holders under the Subordinated Documents, including, without limitation, the principal amount of all debts, claims and indebtedness, accrued and unpaid interest and all premium, fees, costs and expenses, whether primary, secondary, direct, contingent, fixed or otherwise, heretofore, now and from time to time hereafter owing, due or payable, whether before or after the filing of a Proceeding, together with (a) any indebtedness which refinances such principal, interest or other obligations and any amendments, modifications, renewals, supplements, restatements, refinancings, increases or extensions thereof and (b) any interest accruing thereon after the commencement of a Proceeding, without regard to whether or not such interest is allowed or allowable in any Proceeding. All references in this Agreement to the principal amount of the Subordinated Indebtedness shall include any PIK Amount (as defined in the Subordinated Note Purchase Agreement) that is added to such principal amount in accordance with the Subordinated Note Purchase Agreement.

"**Subordinated Holder**s" means the Subordinated Agent and each Person on the date hereof or from time to time that becomes a holder of any Subordinated Indebtedness now or hereafter outstanding, and, in each case, their respective successors and permitted assigns.

"**Subordinated Holder Remedies**" means any action (a) in each case solely with respect to the Subordinated Indebtedness, to take from or for the account of 777 Partners, MTCP or any Company, by set-off or in any other manner, the whole or any part of any moneys which may now or hereafter be owing by 777 Partners, MTCP or such Company, other than receipt of payments of Subordinated Indebtedness to the extent permitted by this Agreement, (b) to sue for payment of, or to initiate or participate with others in any suit, action or proceeding (including any Proceeding) against 777 Partners, MTCP or any Company to (i) enforce payment of or to collect the whole or any part of the Subordinated Indebtedness or (ii) commence judicial enforcement of any of the rights and remedies under the Subordinated Documents or applicable law with respect to the Subordinated Indebtedness, (c) to accelerate the Subordinated Indebtedness, (d) to exercise any put, repurchase or similar option against 777 Partners, MTCP or any Company under any Subordinated Document or to cause such Person to honor any redemption or mandatory prepayment obligation under any Subordinated Document or (e) to take any action under the provisions of any state or federal law, including the UCC, or under any contract or agreement, to enforce, foreclose upon, take possession of or sell the Senior Priority Collateral. Notwithstanding the foregoing, "**Subordinated Holder Remedies**" does not include any action solely to the extent necessary to prevent the running of any applicable statute of limitation or similar restriction on claims.

"**Subordinated Note Purchase Agreement**" shall have the meaning set forth in the recitals hereof.

"**Subordinated Securities**" means any notes, other debt securities, or equity securities of 777 Partners, MTCP or any Company that are issued in a Proceeding in substitution of all or any portion of  the Subordinated Indebtedness pursuant to a confirmed plan of reorganization or adjustment, in each case that (a) are subordinated in right of payment, performance, and otherwise to the Senior  Indebtedness (or any notes or other securities issued in substitution of all or any portion of the  Senior Indebtedness) to at least the same extent that the Subordinated Indebtedness is subordinated to the Senior Indebtedness pursuant to this Agreement, (b) do not have the benefit of any obligation of 777 Partners, MTCP or any Company (whether as issuer, guarantor, or otherwise) unless the Senior Indebtedness has at least the same benefit of the obligation of such Person and the obligations of such Person to the Subordinated Holders are subordinated to the same extent as the obligations of such Persons pursuant to this Agreement, and (c) do not have any terms, and are not subject to or entitled to the benefit of any agreement or instrument that has terms, that are more burdensome to the issuer of or 777 Partners, MTCP or any Company on such debt or equity securities than are the terms of the Subordinated Indebtedness, provided in each case that Subordinated Agent shall have entered into such supplements to or modifications of this Agreement as the Senior Agent may reasonably request to reflect the continued subordination of the Subordinated Securities to the Senior Indebtedness (or notes or other securities issued in substitution of all or a portion thereof), provided, further, that, in either case, no such equity securities shall provide for cash payments of any kind including, but not limited to, dividends or distribution of assets, until the Senior

Indebtedness (or any notes or other securities issued in substitution of all or any portion of the Senior Indebtedness) is Finally Paid.

"**UCC**" means Article 9 of the Uniform Commercial Code, as in effect in any relevant jurisdiction.

2.    <u>Subordination of Subordinated Indebtedness to Senior Indebtedness</u>. Subject to <u>Section 6</u>, 777 Partners, MTCP and each other Company party hereto covenants and agrees, and the Subordinated Holders by their acceptance of the Subordinated Documents (whether upon original issue or upon transfer or assignment) likewise covenant and agree, notwithstanding anything to the contrary contained in any of the Subordinated Documents, that the payment of any and all of the Subordinated Indebtedness by 777 Partners, MTCP or any Company shall be subordinate and subject in right and time of payment, to the extent and in the manner hereinafter set forth, to the Final Payment of all Senior Indebtedness. Each holder of Senior Indebtedness, whether now outstanding or hereafter created, incurred, assumed or guaranteed, shall be deemed to have acquired Senior Indebtedness in reliance upon the provisions contained in this Agreement.

3.    <u>Subordination of Lien in Senior Priority Collateral; Pari Passu Collateral</u>.

(a)    The Subordinated Agent hereby covenants and agrees on behalf of itself and each Subordinated Holder that the Lien of the Subordinated Agent in the Senior Priority Collateral shall be subordinate and subject to the Lien and rights against the Senior Priority Collateral of the Senior Agent arising from or out of the Senior Indebtedness, regardless of the order, time or manner in which any Liens attach to or are perfected in the Senior Priority Collateral. The proceeds of any Disposition by the Senior Agent, any Senior Lender, Subordinated Agent or any Subordinated Holder of all or any part of the Senior Priority Collateral shall be applied in the following order of priorities, irrespective of the application of any rule of law or the defect or impairment of any Senior Loan Document, Subordinated Document or security interest, Lien or assignment thereunder:

(i)    first, to the Senior Agent until all Senior Indebtedness has been Finally Paid,

(ii)    second, to the Subordinated Agent until all Subordinated Indebtedness has been paid in full in cash, and

(i)    third, to the applicable grantor of the Senior Priority Collateral or as a court of competent jurisdiction may otherwise direct.

(b)    In the event any party to this Agreement receives collateral or collateral proceeds to which it is not entitled hereunder, such party shall be deemed to hold all of such proceeds in trust for the benefit of the parties entitled thereto and shall promptly pay over to each such party such proceeds in the same form as received, with any necessary endorsements.

(c)    Subject to <u>Section 7</u>, the Subordinated Agent hereby covenants and agrees that the Subordinated Holders shall not take any action to enforce the Lien of the

Subordinated Agent in the Shared Collateral or any other Liens securing the Subordinated Indebtedness or other rights of any kind the Subordinated Holders may now have or hereafter acquire (or be deemed to now have or hereafter acquire) in respect of the Subordinated Indebtedness against 777 Partners, MTCP, Borrower or any other Company and/or the Shared Collateral or any other Company Property, if any, until the Final Payment of all Senior Indebtedness. The Subordinated Holders shall not ask for or receive from 777 Partners, MTCP, Borrower or any Company any Lien for the Subordinated Indebtedness with respect to which an identical Lien has not been offered to the Senior Agent pursuant to <u>Section 3(f)</u>. Except as otherwise permitted by <u>Section 7</u>, the Subordinated Agent agrees that no Subordinated Holder shall have any right to possession or any right to transfer possession, control or ownership of the Shared Collateral or any other Company Property, whether by judicial action or otherwise.

(d)     In the event the Senior Agent releases or agrees to release any of its Liens in the Senior Priority Collateral in connection with the sale, transfer, lease, license or other disposition thereof (a "***Disposition***") that (i) is in connection with the Senior Agent's exercise of remedies following a Senior Default, or (ii) is conducted by 777 Partners, MTCP or any other Company, as the case may be, and as to which the Senior Agent has provided its written consent or which is otherwise permitted under the Senior Loan Documents, then any Lien held by Subordinated Agent in such Senior Priority Collateral shall be automatically, unconditionally, and simultaneously released. Subordinated Holders shall be deemed to have consented to such Disposition and Subordinated Agent shall execute such releases or other instruments with respect to the Senior Priority Collateral as the Senior Agent requests to evidence the release of the Subordinated Agent's Lien in the Senior Priority Collateral. The Subordinated Agent on behalf of itself and each Subordinated Holder hereby irrevocably appoints the Senior Agent as the true and lawful attorneys of the Subordinated Holders for the purpose of executing and filing any such releases or instruments which Subordinated Agent or any Subordinated Holder may be required to execute, file and/or deliver pursuant to this <u>Section 3(d)</u>. If the Senior Agent waives in writing the application of the Disposition proceeds to the payment of the Senior Indebtedness, such proceeds shall be paid over to the Subordinated Agent for application to the Subordinated Indebtedness unless waived in writing by the Subordinated Agent.

(e)     The Subordinated Agent hereby waives on behalf of itself and each Subordinated Holder any rights it has or may have in the future to object to the appointment of a receiver for all or any portion of the equity or the assets of Borrower or any other Company or to require the Senior Agent to marshal the Senior Priority Collateral or any other Company Property and agrees that the Senior Agent may proceed against the Senior Priority Collateral or any other Company Property (other than Pari Passu Collateral) in any order that it deems appropriate in the exercise of its absolute discretion.

(f)     <u>New Liens</u>. The parties hereto agree that it is their intention that any Company Property that becomes subject to a Lien securing the Subordinated Indebtedness also becomes subject to a Lien securing the Senior Indebtedness; *provided* that, this provision will not be violated with respect to any Lien that is declined in writing

by the Senior Agent. In furtherance of the foregoing, the parties hereto agree (i) to provide written notice to the Senior Agent ten (10) Business Days prior to the date that any new Lien is granted to secure the Subordinated Indebtedness, (ii) upon the request of the Senior Agent, to cooperate in good faith from time to time in order to determine the specific items that are subject to a Lien in favor of a Subordinated Agent in the Company Property, and (iii) to cause the applicable Company, or cooperate with the applicable Company with respect thereto, to grant to the Senior Agent a Lien on such Company Property identical in all material respects to the Lien granted to the Subordinated Agent.

(g)     Pari Passu Collateral. Each of the Subordinated Agent and Senior Agent hereby covenants and agrees on behalf of itself and each Subordinated Holder or Senior Lender, as applicable, that the Liens of the Subordinated Agent and Senior Agent in the Pari Passu Collateral shall be of equal priority regardless of the order, time or manner in which any Liens attach to or are perfected in the Pari Passu Collateral. The proceeds of any Disposition by the Senior Agent, any Senior Lender, Subordinated Agent or any Subordinated Holder of all or any part of the Pari Passu Collateral shall be applied in the following order of priorities, irrespective of the application of any rule of law or the defect or impairment of any Senior Loan Document, Subordinated Document or security interest, Lien or assignment thereunder:

(i)     first, to the Subordinated Agent in reimbursement of any out-of-pocket costs and expenses incurred in connection with taking an enforcement action with respect to the Pari Passu Collateral in accordance with Section 7(b) hereof;

(ii)    second, to the Subordinated Agent and Senior Agent, pro rata in accordance with the outstanding principal amount of the Subordinated Indebtedness and Senior Indebtedness, for the payment in full in cash of the Subordinated Indebtedness and Senior Indebtedness, as applicable,

(iii)   third, to the applicable grantor of the Pari Passu Collateral or as a court of competent jurisdiction may otherwise direct.

4.     Warranties and Representations.

(a)     777 Partners, MTCP and the Subordinated Agent hereby severally represent and warrant that the Senior Agent has been furnished with a true and correct copy of all instruments and securities evidencing or pertaining to the Subordinated Indebtedness.

(b)     777 Partners, MTCP, Borrower and the Senior Agent hereby severally represent and warrant that the Subordinated Agent has been furnished with a true and correct copy of all instruments and securities evidencing or pertaining to the Senior Indebtedness.

(c)     Each of 777 Partners, MTCP and Borrower hereby represents and warrants to each of the Senior Agent, the Senior Lenders and the Subordinated Agent that

this Agreement has been duly executed and delivered by 777 Partners, MTCP and Borrower and constitutes a legal, valid and binding obligation of 777 Partners, MTCP and Borrower enforceable in accordance with its terms except to the extent that the enforceability thereof may be limited by any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws from time to time in effect affecting generally the enforcement of creditors' rights and remedies and general principles of equity.

(d)    The Subordinated Agent represents and warrants to the Senior Agent and Senior Lenders: (i) that this Agreement has been duly executed and delivered by the Subordinated Agent and constitutes a legal, valid and binding obligation of the Subordinated Holders enforceable against the Subordinated Holders in accordance with its terms, except to the extent that the enforceability thereof may be limited by any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws from time to time in effect affecting generally the enforcement of creditors' rights and remedies and general principles of equity; (ii) that Subordinated Agent has the authority to enter into this Agreement on behalf of itself and each Subordinated Holder; (iii) that the Subordinated Agent has not relied and shall not rely on any representation or information of any nature made by or received from the Senior Agent or Senior Lenders relative to 777 Partners, MTCP, Borrower or any other Company in deciding to execute this Agreement or to permit it to continue in effect; and (iv) that the Subordinated Holders are the current holders of the principal amount of Subordinated Indebtedness.

(e)    The Senior Agent represents and warrants to the Subordinated Agent: (i) that this Agreement has been duly executed and delivered by the Senior Agent and constitutes a legal, valid and binding obligation of the Senior Agent enforceable against the Senior Agent in accordance with its terms, except to the extent that the enforceability thereof may be limited by any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws from time to time in effect affecting generally the enforcement of creditors' rights and remedies and general principles of equity; (ii) that the Senior Agent has not relied and shall not rely on any representation or information of any nature made by or received from the Subordinated Agent relative to 777 Partners, MTCP, Borrower or any other Company in deciding to execute this Agreement or to permit it to continue in effect; and (iii) that the Senior Lenders are the current holders of the principal amount of Senior Indebtedness.

5.    <u>Negative Covenants</u>. Except as permitted in <u>Section 6</u>, until all of the Senior Indebtedness has been Finally Paid: (a) the Subordinated Holders shall not request, demand, accept or acquire from 777 Partners, MTCP, Borrower or any other Company, any Lien on any Company Property, other than any Subordinated Securities or Pari Passu Collateral in which a Lien has been granted to (or declined by) the Senior Agent in accordance with <u>Section 3(f)</u>; (b) the Subordinated Holders shall not request, demand, accept or acquire from Borrower or any other Company (other than 777 Partners and MTCP), any guaranty of or obligations with respect to the Subordinated Indebtedness; (c) 777 Partners shall not discharge the Subordinated Indebtedness other than in accordance with the terms of the Subordinated Documents (and as permitted by the Senior Loan Documents and this Agreement); (d) the Subordinated Holders shall not demand or accept from 777 Partners, MTCP, Borrower, any other Company or other Person any consideration which would result in a discharge of the Subordinated Indebtedness

10

other than in accordance with the terms of the Subordinated Documents (and as permitted by the Senior Loan Documents and this Agreement); (e) the Subordinated Holders shall not hereafter give any subordination in respect of the Subordinated Indebtedness; and (f) 777 Partners shall not hereafter issue any instrument, security or other writing evidencing any part of the Subordinated Indebtedness, and the Subordinated Holders shall not receive any such writing, except upon the condition that such security shall bear the legend referred to in Section 25 below and a true copy thereof shall be thereupon promptly furnished to the Senior Agent.

6.    Permitted Payments.

(a)    Notwithstanding the terms of the Subordinated Documents, each of 777 Partners, MTCP, Borrower and each other Company party thereto hereby agrees that it shall not make (and will not permit any other Company to make), and the Subordinated Agent hereby agrees on behalf of itself and each Subordinated Holder that it will not accept from 777 Partners, MTCP, Borrower or such other Company, any payment or distribution with respect to the Subordinated Indebtedness, including without limitation, any payment or distribution received through the exercise of any right of setoff, counterclaim or crossclaim, until the Senior Indebtedness is Finally Paid; *provided that* (i) 777 Partners may make to the Subordinated Holders, and the Subordinated Holders may accept Permitted Payments, and (ii) the foregoing shall not prohibit the Subordinated Agent and Subordinated Holders from receiving Pari Passu Collateral or proceeds thereof pursuant to Section 3(g).

(b)    Upon the cure or waiver in writing by the Senior Agent of any Senior Default, 777 Partners may make, and the Subordinated Holders may receive, Permitted Payments specified in clause (a) of the definition thereof (on a non-accelerated basis) to the extent such payment would be permitted under this Section 6, including without limitation any payments not made due to such Senior Default. No Senior Default shall be deemed to have been waived for purposes of this Section 6 unless and until Borrower shall have received a written waiver in accordance with the Senior Credit Agreement from the Senior Agent. For the avoidance of doubt, the Senior Agent may condition any waiver of any Senior Default on an agreement with Borrower and 777 Partners regarding limitations on the repayment of payments not made to the Subordinated Holders during the pendency of such Senior Default.

(c)    If any Subordinated Holder receives payment pursuant to this Section 6, such payment shall be deemed to constitute a representation by 777 Partners and Borrower that no Senior Default exists or would result therefrom and that such payment is otherwise permitted by this Section.

(d)    This Section 6 shall not relieve 777 Partners of its obligation, which is absolute and unconditional, to make payments on account of the Subordinated Indebtedness in accordance with the terms of the Subordinated Documents and, therefore, any payments not made when due as a result of this Agreement shall remain a Subordinated Default.

11

(e)     Notwithstanding anything contained herein to the contrary, at all times during the term of this Agreement, regardless of whether there exists any Senior Default or Proceeding, 777 Partners shall not be prohibited from making, and the Subordinated Holders shall not be prohibited from receiving, (i) payments in the form of Subordinated Securities (excluding any dividends or distributions arising or associated with such Subordinated Securities), and (ii) any payments in respect of the Subordinated Indebtedness in kind; *provided that* no interest accruing on any such payments in kind may be paid in cash prior to the Payment in Full of all Senior Indebtedness unless such payment of cash interest is a Permitted Payment.

(f)     The provisions of this <u>Section 6</u> shall not be applicable to the extent such provisions are irreconcilably inconsistent with the provisions of <u>Section 8</u>, if applicable.

7.     <u>Forbearance of Legal Remedies</u>.

(a)     <u>Senior Priority Collateral.</u> Until the Senior Indebtedness is Finally Paid, the Subordinated Holders shall not, without the prior written consent of the Senior Agent (with the direction of the Required Senior Lenders), exercise any Subordinated Holder Remedies; *provided*, that (i) Subordinated Agent may take any action (not adverse to the Liens on the Senior Priority Collateral securing the Senior Indebtedness or the rights of the Senior Agent or the Senior Lenders to exercise remedies in respect thereof) in order to prove, preserve or protect (but not enforce) its rights in, and perfection and priority of its Lien on, the Senior Priority Collateral, and (ii) from and after the Subordinated Enforcement Date, Subordinated Agent (or such other Person, if any, as is so authorized under the Subordinated Documents) may exercise or seek to exercise any rights or remedies (including setoff) with respect to any Senior Priority Collateral in respect of any Subordinated Indebtedness, or institute any action or proceeding with respect to such rights or remedies (including any action of foreclosure), but only so long as (a) Senior Agent has not commenced and is not diligently pursuing any enforcement action with respect to a material portion of the Senior Priority Collateral or (b) Borrower, 777 Partners, MTCP or any grantor which has granted a security interest in the Senior Priority Collateral is not then a debtor under or with respect to (or otherwise subject to) any Proceeding.

(b)     <u>Pari Passu Collateral</u>. Only the Subordinated Agent shall act or refrain from acting with respect to the Pari Passu Collateral in accordance with this <u>Section 7(b)</u>, and no Subordinated Holder or Senior Lender shall, or shall instruct the Subordinated Agent or Senior Agent, as applicable, to, and the Subordinated Agent or Senior Agent shall not, commence any judicial or nonjudicial foreclosure proceedings with respect to, seek to have a trustee, receiver, liquidator or similar official appointed for or over, attempt any action to take possession of, exercise any right, remedy or power with respect to, or otherwise take any action to enforce its Lien in or realize upon the Pari Passu Collateral other than in accordance with this <u>Section 7(b)</u>. Upon the Subordinated Agent providing notice by email to the Senior Agent (which the Subordinated Agent shall use reasonably best efforts to provide 10 Business Days prior to commencing such enforcement action) that (i) an Event of Default (under and as defined in the Subordinated Note Purchase Agreement) has occurred and is continuing and (ii) the

Subordinated Indebtedness is currently due and payable in full (whether as a result of acceleration thereof or otherwise) in accordance with the terms of the Subordinated Documents, the Subordinated Agent may exercise any rights or remedies with respect to the Pari Passu Collateral as directed by the requisite Subordinated Holders without the consent of the Senior Agent. The proceeds of any enforcement action taken with respect to the Pari Passu Collateral pursuant to this <u>Section 7(b)</u> shall be distributed in accordance with <u>Section 3(g)</u>.

(c)    Notwithstanding anything contained herein to the contrary or any rights or remedies available to the Subordinated Holders under any of the Subordinated Documents, applicable law or otherwise, prior to the time that the Senior Indebtedness has been Finally Paid, any payments, distributions or other proceeds obtained by the Subordinated Holders from the exercise of any Subordinated Holder Remedies (other than Subordinated Securities) or otherwise in violation of this Agreement shall in any event be held in trust by it for the benefit of the Senior Agent and the Senior Lenders and promptly paid or delivered to the Senior Agent for the benefit of the Senior Lenders in the same form as received, with any necessary endorsements.

(c)    Notwithstanding anything to the contrary contained herein, the Subordinated Holders shall be entitled to (i) have interest on the Subordinated Indebtedness accrue at any applicable default rate of interest under the terms of the Subordinated Documents, and any action to institute such default interest shall not be deemed to be Subordinated Holder Remedies or otherwise prohibited hereunder, and (ii) bid for or purchase the Shared Collateral at any public, private, or judicial foreclosure upon such Shared Collateral, or any sale of Shared Collateral during a Proceeding; *provided that*, such bid shall not include a "credit bid" in respect of any Subordinated Indebtedness unless the proceeds of such foreclosure or sale are otherwise sufficient to cause the Final Payment of Senior Indebtedness immediately upon closing.

(d)    <u>Insolvency Proceedings.</u>    Until ninety-one (91) days following Final Payment of the Senior Indebtedness, Subordinated Agent hereby covenants and agrees on behalf of itself and each Subordinated Holder that it will not petition or otherwise invoke or cause any other Person to invoke the process of the United States of America, any state or other political subdivision thereof or any other jurisdiction, or of any entity exercising executive, legislative, judicial, regulatory or administrative functions of government for the purpose of commencing or sustaining a Proceeding against 777 Partners, MTCP or any Company.

8.    <u>Dissolution, Liquidation, Reorganization or Bankruptcy</u>.

(a)    In the event of any Proceeding involving 777 Partners, MTCP, Borrower or any other Company:

(i)    all Senior Indebtedness shall be Finally Paid before the Subordinated Holders shall be entitled to receive from 777 Partners, MTCP, Borrower or any other Company any payment on account of any Subordinated Indebtedness;

(ii)     any payment or distribution of assets of such Person of any kind or character, whether in cash, property or securities, to which the Subordinated Holders would be entitled except for these provisions, shall be paid by the liquidating trustee or agent or other Person making such payment or distribution directly to the Senior Agent, to the extent necessary to make Final Payment of all Senior Indebtedness remaining unpaid, after giving effect to any concurrent payment or distribution or provision therefor to the holders of such Senior Indebtedness. The Subordinated Agent, on behalf of itself and each Subordinated Holder, irrevocably authorizes, empowers and directs any debtor, debtor-in-possession, receiver, trustee or agent or other Person having authority, to pay or otherwise deliver all such payments or distributions to the Senior Agent; and

(iii)     Notwithstanding anything contained herein to the contrary, Subordinated Holders are entitled to receive and retain Subordinated Securities.

(b)     Until the Senior Indebtedness has been Finally Paid, if a Proceeding shall occur and be continuing, the Subordinated Agent shall file all claims it may have against 777 Partners, MTCP, Borrower or any other Company, and shall direct the debtor in possession or trustee in bankruptcy, as appropriate, to pay over to the Senior Agent all amounts due to the Subordinated Holders on account of the Subordinated Indebtedness (other than Subordinated Securities) until the Senior Indebtedness has been Finally Paid. If the Subordinated Agent fails to file such claims prior to fifteen (15) days before the expiration of time to do so, or if the Subordinated Holders fail to vote such claims prior to three (3) Business Days before the expiration to do so, the Senior Agent may (but shall have no obligation to) file and/or vote such claims in the Subordinated Agent's name on behalf of the Subordinated Holders. If the Senior Agent votes any such claim in accordance with the authority granted hereof, the Subordinated Holders shall not be entitled to withdraw or change such vote.

(c)     The Subordinated Agent, on behalf of itself and each Subordinated Holder, agrees, in connection with any such Proceeding, that while it shall retain the right to vote and otherwise act in any such Proceeding (including the right to vote to accept or reject any plan of partial or complete liquidation, reorganization, arrangement, composition or extension), it will not directly or indirectly take any action or vote in any way so as to (i) contest the validity of the Liens securing the Senior Indebtedness, (ii) contest the enforceability of any of the Senior Loan Documents, (iii) contest the Senior Agent's and Senior Lenders' priority position over the Subordinated Holders created by this Agreement, (iv) oppose a plan that has been accepted in writing by the Senior Agent and Senior Lenders or approve a plan that has not been accepted in writing by the Senior Agent and Senior Lenders, or (v) have, directly or indirectly, any of the following effects: (A) extension of the final maturity of and/or forgiveness, reduction or cram-down of the Senior Indebtedness or deferral of any required payment in respect of Senior Indebtedness, (B) opposing or objecting to initiatives or claims by the Senior Agent or Senior Lenders for adequate protection or relief from the automatic stay, use of cash collateral or super-priority expense of administration for failure of adequate protection, (C) challenging in any respect treatment, validity, amount, priority or enforcement of the Senior Indebtedness as a first priority perfected fully secured claim, (D) objecting to or blocking current payment of any obligation in respect of Senior Indebtedness, (E)

14

assenting to or supporting any requested extension of the exclusivity period for the submission by 777 Partners, MTCP, Borrower or any Company of any plan of reorganization or liquidation under the Bankruptcy Code unless such extension is assented to or supported by the Senior Agent, and (F) opposing or objecting to any Disposition of the Senior Priority Collateral or any other Company Property (other than Pari Passu Collateral) that has been consented to by the holders of Senior Indebtedness, provided any proceeds received from the Disposition of the Senior Priority Collateral are applied in accordance with Section 3 hereof. In the event of any violation of any provisions of this section by the Subordinated Holders, the Senior Agent may in the name of the Subordinated Holders, or in its own name thereafter amend, modify or rescind any such prior act taken or vote issued, in violation of this Agreement. Except as set forth in this Agreement, the Subordinated Holders shall, in any Proceeding, be entitled to (x) file claims or statements of interest with respect to all or any portion of the Subordinated Indebtedness, and (y) file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims of the Subordinated Holders, including, without limitation, any claims secured by the Shared Collateral. The Senior Agent, Senior Lenders and Subordinated Agent on behalf of itself and the Subordinated Holders agree to not seek to be treated as part of the same class of creditors in a Proceeding and will not oppose or contest any pleading by the other seeking separate classification of their respective secured claims.

(d)    Until the Senior Indebtedness has been Finally Paid, if a Proceeding shall occur and be continuing, the Subordinated Agent on behalf of itself and each Subordinated Holder hereby (i) agrees not to object and shall be deemed to have consented to any post-petition financing of 777 Partners, MTCP, Borrower or any other Company that is consented to by Senior Agent, such deemed consent (and agreement not to object) to include the granting by 777 Partners, MTCP, Borrower or any other Company to the providers of such post-petition financing of senior Liens and priorities in connection therewith and/or the use of cash collateral and (ii) agrees that adequate notice of such financing or cash collateral usage to the Subordinated Holders shall have been provided if the Subordinated Agent received notice in accordance with Section 16 hereof two (2) Business Days prior to the entry of any order approving such financing or cash collateral usage.

(e)    The Subordinated Agent on behalf of itself and each Subordinated Holder agrees not to directly or indirectly (i) initiate any proceeding involving the marshalling of the Senior Priority Collateral or any other Company Property (other than the Pari Passu Collateral) (whether in a Proceeding or otherwise) or (ii) assert any right it may have to "adequate protection" of its interest, if any, in the Lien of the Subordinated Agent in the Senior Priority Collateral in any Proceeding other than replacement liens or super priority claims (*provided that* the Senior Agent and/or Senior Lenders also receives replacement liens or super priority claims as adequate protection and such replacement liens or super priority claims granted to the Senior Agent and/or Senior Lenders are senior to those granted to the Subordinated Holders) and agrees that it will not seek to have the automatic stay lifted with respect to the Lien of the  Subordinated Agent in the Senior Priority Collateral, in each case without the prior written consent of the Senior Agent.

Notwithstanding anything herein to the contrary, the Subordinated Holders shall have irrevocably agreed, pursuant to Section 1129(a)(9) of the Bankruptcy Code, in any stipulation or order granting adequate protection of its junior interest in the Senior Priority Collateral, that such junior super priority claims may be paid under any plan of reorganization in any combination of cash, debt, equity or other property having a value on the effective date of such plan equal to the allowed amount of such claims. The Subordinated Agent on behalf of itself and each Subordinated Holder waives any claim or defense the Subordinated Holders may now or hereafter have arising out of the election by the Senior Agent in any Proceeding instituted under Chapter 11 of the Bankruptcy Code of any use of cash collateral, any borrowing or any grant of a security interest under Sections 363 and/or 364 of the Bankruptcy Code by 777 Partners, MTCP, Borrower or any other Company, as debtor-in-possession, subject to the limitations set forth in Section 8(d) hereof. The Subordinated Agent agrees on behalf of itself and each Subordinated Holder that it will not object to or oppose a Disposition of any property securing all or any part of the Senior Indebtedness free and clear of any Liens or other claims of the Subordinated Holders under Section 363 of the Bankruptcy Code if the Senior Agent has consented to such Disposition, and such proceeds are to be applied in accordance with the provision of Section 3 hereof. The Subordinated Agent further agrees on behalf of itself and each Subordinated Holder that it will not seek to participate on any creditors committee in respect of the Subordinated Indebtedness without the Senior Agent's prior written consent. To the extent that the Senior Agent receives payments on, or proceeds of collateral for, the Senior Indebtedness which are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law, or equitable cause, then as between the Senior Agent and the Subordinated Holders hereunder, to the extent of such payment or proceeds received, the Senior Indebtedness, or part thereof, intended to be satisfied shall be revived and continue in full force and effect as if such payments or proceeds had not been received by the Senior Agent or Senior Lenders. The Subordinated Agent further agrees to release its Lien in the Senior Priority Collateral, provided such proceeds received from the sale of the Senior Priority Collateral are to be applied in accordance with the provisions of Section 3 hereof.

9.      Obligation of 777 Partners Unconditional.  Nothing contained herein or in the Senior Loan Documents is intended to or shall impair, as between 777 Partners and the Subordinated Holders only, the obligation of 777 Partners, which is absolute and unconditional, to pay to the Subordinated Holders the Subordinated Indebtedness as and when the same shall become due and payable in accordance with their terms, or to affect the relative rights of the Subordinated Holders and creditors of 777 Partners, MTCP, Borrower or any other Company other than the Senior Agent and Senior Lenders.

10.      Subordination Rights Not Impaired by Acts or Omissions of 777 Partners or Holders of Senior Indebtedness.

(a)      No right of any present or future holders of any Senior Indebtedness to enforce the subordination provisions as provided herein shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of 777 Partners, MTCP,

16

Borrower or any other Company; by any act or failure to act by any such holder; by any act or failure to act by any other holder of the Senior Indebtedness; or by any noncompliance by 777 Partners, MTCP, Borrower or any other Company with the terms hereof, regardless of any knowledge thereof which any such holder may have or be otherwise charged with. The Subordinated Holders shall not be released, nor shall the Subordinated Holders' obligation hereunder be in anyway diminished, by any of the following: (i) the exercise or the failure to exercise by the Senior Agent and Senior Lenders of any rights or remedies conferred on it or them under the Senior Loan Documents hereunder or existing at law or otherwise, or against the Senior Priority Collateral or any other Company Property (other than Pari Passu Collateral); (ii) the commencement of an action at law or the recovery of a judgment at law against 777 Partners, MTCP, Borrower or any other Company for the performance of the Senior Indebtedness and the enforcement thereof through levy or execution or otherwise; (iii) the taking or institution of any other action or proceeding against 777 Partners, MTCP, Borrower or any other Company; (iv) any delay in taking, pursuing, or exercising any of the foregoing actions, rights, powers, or remedies (even though requested by the Subordinated Holders) by the Senior Agent, Senior Lenders or any other Person acting for the Senior Agent and Senior Lenders; (v) any lack of validity or enforceability of any Senior Loan Document; (vi) the release or non-perfection of any collateral securing the Senior Indebtedness; or (vii) any other circumstance which might otherwise constitute a defense available to, or a discharge of, 777 Partners, MTCP, Borrower or any other Company in respect of the Senior Indebtedness or the Subordinated Holders in respect of this Agreement.

(b)    Without limiting the generality of the foregoing, and anything else contained herein to the contrary notwithstanding but subject to Section 14 hereof, the Senior Agent and Senior Lenders, from time to time, without prior notice to or the consent of the Subordinated Holders, may take all or any of the following actions without in any manner affecting or impairing the obligation or liability of the Subordinated Holders hereunder: (i) obtain a Lien in any property to secure any of the Senior Indebtedness; (ii) obtain the primary and secondary liability of any party or parties with respect to any of the Senior Indebtedness; (iii) renew, extend, or otherwise change the time for payment of the Senior Indebtedness or any installment thereof for any period, or change the interest rates and fees with respect to the Senior Indebtedness, (iv) renew, reaffirm, extend, release or otherwise change any liability of any nature of any Person, including any Company, with respect to the Senior Indebtedness; (v) exchange, enforce, waive, release, and apply any Senior Priority Collateral or other Company Property (other than Pari Passu Collateral) and direct the order or manner of sale thereof as the Senior Agent or Senior Lenders may in its or their discretion determine; (vi) enforce their rights hereunder, whether or not the Senior Agent or Senior Lenders shall proceed against any other Person; (vii) exercise its rights to consent to any action or non-action of 777 Partners, MTCP, Borrower or any other Company which may violate the covenants and agreements contained in the Senior Loan Documents, with or without consideration, on such terms and conditions as may be acceptable to it; or (viii) exercise any of its rights conferred by the Senior Loan Documents or by law.

11.   <u>Waivers</u>.  777 Partners, MTCP, Borrower, each other Company party hereto and the Subordinated Agent on behalf of itself and each Subordinated Holder each hereby waive, to the fullest extent permitted by law, any defense based on the adequacy of a remedy at law which might be asserted as a bar to the remedy of specific performance of this Agreement in any action brought therefor by the Senior Agent or Senior Lenders. To the fullest extent permitted by law and except as to any notices specified in this Agreement, 777 Partners, MTCP, Borrower, each other Company party hereto and the Subordinated Agent on behalf of itself and each Subordinated Holder each hereby further waive: presentment, demand, protest, notice of protest, notice of default or dishonor, notice of payment or nonpayment and any and all other notices and demands of any kind in connection with all negotiable instruments evidencing all or any portion of the Senior Indebtedness or the Subordinated Indebtedness to which 777 Partners, MTCP, Borrower, any other Company or the Subordinated Holders may be a party; prior notice of and consent to any loans made, extensions granted or other action taken in reliance thereon; and all other demands and notices of every kind in connection with this Agreement, the Senior Indebtedness or the Subordinated Indebtedness. The Subordinated Agent on behalf of itself and each Subordinated Holder consents to any release, renewal, extension, compromise or postponement of the time of payment of the Senior Indebtedness, to any substitution, exchange or release of collateral therefor, and to the addition or release of any Person primarily or secondarily liable thereon. Subordinated Agent on behalf of itself and each Subordinated Holder agrees that Senior Agent has made no warranties or representations with respect to the due execution, legality, validity, completeness or enforceability of the documents, instruments and agreements evidencing the Senior Indebtedness. Subordinated Agent on behalf of itself and each Subordinated Holder hereby waives any claim which it may now or hereafter have against the Senior Agent or the Senior Lenders arising out of (i) any and all actions which Senior Agent or the Senior Lenders takes or omits to take (including without limitation actions with respect to the creation, perfection or continuation of Liens or security interests in any existing or future collateral securing the Senior Indebtedness, actions with respect to the occurrence of a Senior Default or any other event of default under any documents, instruments or agreements evidencing the Senior Indebtedness, actions with respect to the foreclosure upon, sale, release, or depreciation of, or failure to realize upon, any of the Senior Priority Collateral or any other Company Property (other than Pari Passu Collateral) and actions with respect to the collection of any claim for all or any part of the Senior Indebtedness from any account debtor, guarantor, Company or other person or entity) with respect to the documents, instruments and agreements evidencing the Senior Indebtedness or to the collection of the Senior Indebtedness or the valuation, use, protection or release of the Senior Priority Collateral or any other Company Property (other than Pari Passu Collateral), except for such actions taken or omitted in violation of the provisions of this Agreement, (ii) Senior Agent's election (whether on behalf of the Senior Lenders or Subordinated Holders) in any Proceeding instituted under the Bankruptcy Code, except to the extent in violation of the provisions of this Agreement, and/or (iii) any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code by 777 Partners, MTCP, Borrower or any other Company, as debtor-in-possession, except to the extent in violation of the provisions of this Agreement.

12.   <u>No Estoppel</u>.  Neither the failure nor any delay on the part of the Senior Agent or Senior Lenders to exercise any right, remedy, power or privilege hereunder shall operate as a waiver thereof or give rise to an estoppel, nor be construed as an agreement to modify the terms of this Agreement, nor shall any single or partial exercise of any right, remedy, power or

privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver by a party hereunder shall be effective unless it is in writing and signed by the party making such waiver, and then only to the extent specifically stated in such writing.

13. <u>Incorrect Payments; Specific Performance</u>. If 777 Partners, MTCP, Borrower or any other Company shall make or the Subordinated Holders shall collect any payment or obtain any asset on account of the principal of, premium or interest on or any other amounts due under the Subordinated Indebtedness in contravention of this Agreement, such payments and assets shall be held in trust by such Subordinated Holder, and not commingled with any assets of the Subordinated Holder and shall be paid over and delivered to the Senior Agent on behalf of the Senior Lenders promptly upon receipt thereof in the same form as received, with any necessary endorsements. At any time the Subordinated Holders fail to comply with any provision of this Agreement, the Senior Agent and Senior Lenders may demand specific performance of this Agreement, whether or not 777 Partners, MTCP, Borrower or any other Company has complied with this Agreement, and may exercise any other remedy available at law or equity.

14. <u>Amendment of the Subordinated Documents and Senior Loan Documents</u>.

(a)     The Subordinated Indebtedness may at any time be amended, modified, supplemented or waived without notice to, or the consent of, the Senior Agent or any Senior Lender; *provided* that until the Senior Indebtedness has been Finally Paid, 777 Partners, MTCP and the Subordinated Holders may not at any time enter into any Specified Amendment or refinancing of the Subordinated Indebtedness without the prior written consent of the Senior Agent (acting on behalf of the Required Senior Lenders).

(b)     The Senior Indebtedness may at any time be amended, modified, restated, refinanced or waived without notice to, or the consent of, the Subordinated Holders; *provided* that any such amendment, modification, restatement, refinancing or waiver resulting in (i) the Debt to Capital Ratio exceeding 75% or (ii) the rate of interest applicable to the Senior Indebtedness increasing (other than solely as a result of increases in the Term SOFR Reference Rate) to a per annum rate that is more than 2.00% per annum above such rate of interest in effect on the date hereof will require the prior written consent of the Subordinated Agent.

(c)     Notwithstanding clause (a) above, if the Senior Loan Documents are amended, supplemented or otherwise modified to change any existing, or to add any, financial or other covenant, representation or warranty, default trigger or other provisions, then 777 Partners shall offer the Subordinated Holders the opportunity, and the Subordinated Holders shall be permitted, to amend, supplement, or otherwise modify the Subordinated Documents to reflect such changes or additions, in each case without the consent of the Senior Agent or any Senior Lender; *provided that*, (i) nothing contained herein shall impair or delay the closing of any such change, extension, renewal, refinancing, alternation, supplement, amendment or other modification of the applicable Senior Loan Documents, and (ii) to the extent applicable, any relative difference between such covenants, representations, warranties, triggers or provisions as reflected in the Senior Credit Agreement and the Subordinated Note Purchase Agreement, in each case in

effect on the date hereof, shall be maintained or, with respect to additional covenants, representations, warranties, triggers or provisions, shall be reflected therein, and *provided further that* any monetary thresholds referenced therein shall be adjusted ratably to incorporate the same relative difference as reflected generally between monetary amounts set forth in the Senior Loan Documents and the Subordinated Documents, in each case, as in effect on the date hereof.

15.    Inconsistent or Conflicting Provisions; Construction. If a provision of the Senior Loan Documents or the Subordinated Documents is inconsistent or conflicts with the provisions of this Agreement, the provisions of this Agreement shall govern and prevail. The term "including" is not limiting and means "including without limitation." In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including"; the words "to" and "until" each mean "to but excluding," and the word "through" means "to and including."

16.    Notices. Any notice, consent or other communication provided for in this Agreement shall be in writing and shall be delivered personally (effective upon delivery), via facsimile (effective upon confirmation of transmission), via overnight courier (effective the next Business Day after dispatch if instructed to deliver on next business day), via U.S. Mail (effective 3 Business Days after mailing, postage prepaid, first class) or via email (effective upon the sender's receipt of an acknowledgment from the intended recipient, such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment) to each party at its address(es), facsimile number(s) and/or email address(s) set forth on Annex I hereto, or to such other address as either party shall specify to the other in writing from time to time. The Subordinated Agent shall provide the Senior Agent with concurrent written notice as it provides to Borrower upon the occurrence of an event of default under the Subordinated Documents.

17.    Entire Agreement. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether express or implied, oral or written. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by the Senior Agent and the Subordinated Agent; *provided that* any such change, waiver or amendment shall only become binding upon 777 Partners, MTCP, Borrower or any other Company by their written consent thereto. This Agreement shall constitute a Senior Loan Document and a Subordinated Document, and the recitals hereto shall constitute part of this Agreement.

18.    Expenses. Borrower agrees to pay the Senior Agent and Senior Lenders on demand all expenses of every kind, including without limitation attorney's fees that the Senior Agent and Senior Lenders incur in enforcing any of their rights against 777 Partners, MTCP, Borrower, any other Company and/or the Subordinated Holders under this Agreement.

19.    Successors and Assigns.

(a)    This Agreement shall inure to the benefit of the Senior Agent, the Senior Lenders, the Subordinated Agent, the Subordinated Holders, and their respective

successors and assigns, and shall be binding upon 777 Partners, MTCP, Borrower, any other Company party hereto and the Senior Agent and Senior Lenders and their respective successors and assigns, and the Subordinated Agent and Subordinated Holders and their respective successors and assigns. The Senior Agent and Senior Lenders, without prior notice or consent of any kind, may sell, assign or transfer any Senior Indebtedness, and in such event each and every immediate and successive assignee or transferee thereof may be given the right by such Person to enforce this Agreement in full against 777 Partners, MTCP, Borrower, any other Company and the Subordinated Holders, by suit or otherwise, for its own benefit. Notwithstanding the failure of any transferee to execute or deliver an agreement substantially identical to this Agreement, the rights and obligations of the Subordinated Holders shall survive any sale, assignment or other transfer of all or any portion of the Senior Indebtedness.

(b)     The Subordinated Holders, without prior notice or consent of any kind, may sell, assign or transfer all or any portion of the Subordinated Indebtedness in accordance with the Subordinated Note Purchase Agreement as in effect on the date hereof; *provided* that (i) the transferee thereof shall have executed and delivered to the Senior Agent an agreement substantially identical to this Agreement, providing for the continued subordination of the Subordinated Indebtedness to the Senior Indebtedness as provided herein and for the continued effectiveness of all of the rights of the Senior Agent and Senior Lenders arising under this Agreement, or such transferee, upon request of the Senior Agent, executes a joinder to this Agreement and (ii) the related Subordinated Documents evidencing such Subordinated Indebtedness shall contain the legend referred to in Section 25 below.

(c)     Notwithstanding the failure of any of the conditions to a transfer specified in Section 19(b) above, including the failure of any transferee to execute or deliver an agreement substantially identical to this Agreement, the subordination effected hereby shall survive any sale, assignment, pledge, disposition or other transfer of all or any portion of the Subordinated Indebtedness, and the terms of this Agreement shall be binding upon the respective successors and assigns of the Senior Agent, Senior Lenders and the Subordinated Holders, as provided in this Section 19.

(d)     The Subordinated Agent on behalf of itself and each Subordinated Holder hereby agrees that any party that refinances the Senior Indebtedness of the Senior Lenders in whole may rely on and enforce this Agreement as if it were the Senior Agent and Senior Lenders. The Subordinated Agent further hereby agrees that it will, at the request of the Senior Agent, enter into an agreement, in the form of this Agreement, mutatis mutandis, to subordinate the Subordinated Indebtedness, to the same extent as provided herein, to the party refinancing all of such Senior Indebtedness; *provided that* the failure of the Subordinated Agent to execute such an agreement shall not affect such party's right to rely on and enforce the terms of this Agreement.

(e)     Notwithstanding anything to the contrary in this Section 19, within 30 days after the occurrence and during the continuation of an Event of Default specified in Section 8.1(a), (j) or (k) of the Senior Credit Agreement or any acceleration pursuant to Section 8.2 or 8.3 thereof (each, a "***Purchase Option Triggering Event***"), the

Subordinated Holders shall have the option (but not the obligation), exercisable by the Subordinated Holders by delivering a written notice to the Senior Agent on behalf of the Senior Lenders expressly indicating that the Subordinated Holders are exercising the purchase option under this Section 19(e) (a "***Purchase Notice***"), to purchase all (but not less than all) of the Senior Debt as provided pursuant to this Section 19(e). Any such Purchase Notice shall be irrevocable. On the date specified in the Purchase Notice (which date shall not be more than 30 days after the receipt by the Senior Agent of the Purchase Notice), the Senior Holders shall sell to the Subordinated Holders that are designated in the Purchase Notice as purchaser, and the Subordinated Holders shall purchase from the Senior Lenders, all of the Senior Debt as provided pursuant to this Section 19(e). Upon the date of such purchase and sale, the purchasing Subordinated Holders shall (a) pay to the Senior Agent for the benefit of the Senior Lenders as the purchase price thereof the full amount of all the Senior Indebtedness then outstanding and unpaid (including the principal, interest, fees, and expenses, including reasonable attorneys' fees and expenses), and (b) agree to reimburse the Senior Agent and Senior Lenders in respect of any indemnification obligations of the Borrower and other Companies under the Senior Loan Documents as to matters or circumstances that could reasonably be expected to result in any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) to Senior Agent and Senior Lenders. Such purchase and sale shall be made by execution and delivery to the purchasing Subordinated Holders of an Assignment and Acceptance in the form attached to the Senior Credit Agreement. Such purchase shall be expressly made without recourse to or representation or warranty of any kind by the Senior Agent and Senior Lenders except that each Senior Lender shall represent and warrant (i) the amount of the Senior Indebtedness being sold by it as reflected in its books and records (but without representation or warranty as to the collectability, validity or enforceability thereof), (ii) that it owns such Senior Indebtedness free and clear of any Liens or encumbrances created by it and (iii) that it has the right to assign such Senior Indebtedness and the Liens securing the Senior Indebtedness (and nothing in this Agreement shall be construed to prevent or limit such assignment or sale). Notwithstanding anything to the contrary contained in the Senior Credit Agreement, each Company hereby consents to any sale and purchase of the Senior Indebtedness pursuant to this Section 19(e).

(f)    Notice of Purchase Option Triggering Event. The Senior Agent shall make commercially reasonable efforts to provide notice to the Subordinated Agent of a Purchase Option Triggering Event promptly following the occurrence thereof; *provided* that, any failure or delay of the Senior Agent to provide such notice shall not constitute a breach of this Agreement, create any liability for the Senior Agent hereunder, or prevent the 30-day period for the Subordinated Agent to provide a Purchase Notice under Section 19(e) from commencing.

20.    Gratuitous Bailee For Perfection.

(a)    Senior Agent acknowledges and agrees it shall hold the Lien in the Senior Priority Collateral, to the extent the Lien on the Senior Priority Collateral is perfected by the possession or control of such Senior Priority Collateral (the "***Pledged Collateral***"), as sub-agent or gratuitous bailee for the Subordinated Agent, in each case solely for the

purpose of perfecting the Lien granted under the Subordinated Documents in the Senior Priority Collateral and subject to the terms and conditions of this <u>Section 20</u>. Until the Final Payment of the Senior Indebtedness, the Subordinated Agent shall deliver to the Senior Agent any Pledged Collateral in its possession.

(b)    Except as otherwise specifically provided herein, until the Senior Indebtedness has been Finally Paid, the Senior Agent and Senior Lenders shall be entitled to deal with the Pledged Collateral in accordance with the terms of the Senior Loan Documents as if the Liens under the Subordinated Documents did not exist. The rights of the Subordinated Holders with respect to the Pledged Collateral shall at all times be subject to the terms of this Agreement.

(c)    The Senior Agent shall have no obligation whatsoever to the Subordinated Holders to assure that any of the Pledged Collateral is genuine or owned by 777 Partners and MTCP or to protect or preserve rights or benefits of any Person or any rights pertaining to the Pledged Collateral, except as expressly set forth in this <u>Section 20</u>. The duties or responsibilities of the Senior Agent under this <u>Section 20</u> shall be limited solely to holding the Pledged Collateral as sub-agent and gratuitous bailee for the Subordinated Holders for purposes of perfecting the Lien held by the Subordinated Agent and delivering the Pledged Collateral to the Subordinated Agent pursuant <u>Section 20(e)</u>.

(d)    The Senior Agent shall not have by reason of the Subordinated Documents or this Agreement, or any other document, a fiduciary relationship in respect of the Subordinated Holders, and the Subordinated Agent on behalf of itself and each Subordinated Holder hereby waives and releases the Senior Agent from all claims and liabilities arising pursuant to the Senior Agent's role under this <u>Section 20</u> as sub-agents and gratuitous bailees with respect to the Pledged Collateral.

(e)    Upon the Final Payment of the Senior Indebtedness, the Senior Agent shall, at Borrower's sole cost and expense, deliver to the Subordinated Agent, to the extent that it is legally permitted to do so, all Pledged Collateral, including all proceeds thereof, held by the Senior Agent or any of its agents or bailees, together with any necessary endorsements.

21.    <u>Covenant Not to Challenge</u>. This Agreement has been negotiated by the parties with the expectation and in reliance upon the assumption that the instruments and documents evidencing the Senior Indebtedness are valid and enforceable. In determining whether to enter into this Agreement, the Subordinated Agent has assumed such validity and enforceability, and has agreed to the provisions contained herein, without relying upon any reservation of a right to challenge or call into question such validity or enforceability. As between the Senior Agent and Senior Lenders, on the one hand, and the Subordinated Holders, on the other hand, the Subordinated Agent on behalf of itself and each Subordinated Holder hereby covenants and agrees, to the fullest extent permitted by law, that it shall not initiate in any proceeding a challenge to the validity or enforceability of the documents and instruments evidencing the Senior Indebtedness or the validity, perfection or priority of any Lien of the Senior Agent securing the Senior Indebtedness, nor shall the Subordinated Holders instigate other parties to raise any such challenges, nor shall the Subordinated Holders participate in or otherwise assert

any such challenges which are raised by other parties. As between the Senior Agent and Senior Lenders, on the one hand, and the Subordinated Holders, on the other hand, the Senior Agent hereby covenants and agrees, on behalf of itself and the Senior Lenders, to the fullest extent permitted by law, that it shall not initiate in any proceeding a challenge to the validity or enforceability of the documents and instruments evidencing the Subordinated Indebtedness or the validity, perfection or priority of the Lien of the Subordinated Agent in the Senior Priority Collateral securing the Subordinated Indebtedness, nor shall the Senior Agent or Senior Lenders instigate other parties to raise any such challenges, nor shall the Senior Agent or Senior Lender participate in or otherwise assert any such challenges which are raised by other parties.

22. <u>Subrogation</u>. Subject to the Final Payment of all Senior Indebtedness and the provisions of <u>Section 24</u> hereof, the Subordinated Holders shall be subrogated to the rights of the Senior Agent and Senior Lenders to receive payments and distributions of cash, property and securities applicable to the Senior Indebtedness to the extent that distributions otherwise payable to the Subordinated Holders have been applied to the Senior Indebtedness, until all amounts payable under the Subordinated Indebtedness shall have been paid in full. For purposes of such subrogation, no payments or distributions to the Senior Agent or Senior Lenders of any cash, property or securities to which the Subordinated Holders would be entitled except for the provisions of this Agreement, and no payment pursuant to the provisions of this Agreement to the Senior Agent or Senior Lenders by the Subordinated Holders shall, as among 777 Partners, MTCP, Borrower, any other Company and their creditors other than the Senior Agent and Senior Lenders, be deemed to be a payment or distribution by 777 Partners, MTCP, Borrower or any other Company to or on account of the Senior Indebtedness, it being understood and agreed that the provisions of this Agreement are solely for the purpose of defining the relative rights of the Senior Agent and Senior Lenders on the one hand, and the Subordinated Holders on the other hand. If the Senior Agent or Senior Lenders receive any payment or distribution on account of the Senior Indebtedness in excess of the outstanding Senior Indebtedness while the Subordinated Indebtedness remains outstanding, the Senior Agent and/or Senior Lenders shall promptly turn over such excess to the Subordinated Agent for application to the Subordinated Indebtedness. A release of any claim by the Senior Agent or Senior Lenders shall not, as between 777 Partners and the Subordinated Holders, limit the rights of subrogation of the Subordinated Holders hereunder. If 777 Partners fails to make any payment on account of the Subordinated Indebtedness by reason of any provision contained herein, such failure shall, notwithstanding such provision contained herein, constitute a default with respect to the Subordinated Indebtedness if and to the extent such failure would otherwise constitute such a default in accordance with the terms of the Subordinated Indebtedness.

23. <u>Termination of Agreement</u>. This Agreement shall continue and shall be irrevocable until the date all of the Senior Indebtedness has been Finally Paid or otherwise discharged and released in an express writing to such effect by the Senior Agent.

24. <u>Reinstatement</u>. The obligations of the Subordinated Holders under this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment in respect of any Senior Indebtedness is rescinded or must otherwise be restored or returned by the Senior Agent or Senior Lenders by reason of any bankruptcy, reorganization, arrangement, composition or similar proceeding or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, 777 Partners, MTCP, Borrower, any other

Company or any substantial part of its property, or otherwise, all as though such payment had not been made.

25.  Legends. Until the termination of this Agreement, the Subordinated Agent will cause to be clearly, conspicuously and prominently inserted on the face of the Subordinated Note Purchase Agreement and any other Subordinated Document, as well as any renewals or replacements thereof, the following legend:

"THIS INSTRUMENT AND THE RIGHTS AND OBLIGATIONS EVIDENCED HEREBY ARE SUBORDINATED IN THE MANNER AND TO THE EXTENT SET FORTH IN THAT CERTAIN SUBORDINATION AND INTERCREDITOR AGREEMENT DATED AS OF JUNE 30, 2022 AMONG BMO HARRIS BANK N.A., LEADENHALL CAPITAL PARTNERS LLP, LEADENHALL LIFE SMA III ICAV, THE SUBORDINATED HOLDERS PARTY THERETO, BRICKELL INSURANCE HOLDINGS LLC, 777 PARTNERS LLC AND MTCP, LLC, AS AMENDED, RESTATED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME."

777 Partners' and Borrower's books shall be marked to evidence the subordination of all of the Subordinated Indebtedness to the holders of Senior Indebtedness, in accordance with the terms of this Agreement. The Senior Agent is authorized to examine such books from time to time in accordance with the terms of the Senior Credit Agreement and to make any notations required by this Agreement.

26.  Governing Law. This Agreement and any claim, controversy, dispute or cause of action (whether in contract, tort or otherwise) based upon, arising out of or relating to this Agreement, and the rights and duties of the parties hereto, shall be governed by and construed and determined in accordance with the internal laws of the State of New York.

27.  Submission to Jurisdiction; Wavier of Venue; Services of Process. EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN THE BOROUGH OF MANHATTAN IN NEW YORK AND OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT.  EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER

PROVIDED BY LAW.  NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT THAT ADMINISTRATIVE AGENT AND LENDERS MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AGAINST BORROWER, ANY COMPANY OR THEIR PROPERTY IN THE COURTS OF ANY OTHER JURISDICTION.

28.    <u>Jury Trial</u>. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

28.    <u>Severability</u>. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

30.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, and by the different parties hereto on separate counterpart signature pages, each of which shall constitute an original, and all such counterparts taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopy, electronic signature (e.g. DocuSign), emailed .pdf or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart of this Agreement and such counterpart shall be deemed to be an original hereof.

31.    <u>Sections</u>. The section headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

32.    <u>Defines Rights of Creditors</u>. The provisions of this Agreement are solely for the purpose of defining the relative rights of Senior Agent, the Senior Lenders and the Subordinated Holders and shall not be deemed to create any rights or priorities in favor of any other Person including 777 Partners, MTCP, Borrower or any other Company.

33.    <u>Additional Documentation</u>. 777 Partners, MTCP, Borrower, any other Company and the Subordinated Holders shall execute and deliver to the Senior Agent such further instruments and shall take such further action as the Senior Agent may at any time or times reasonably request in order to carry out the provisions and intent of this Agreement, provided the terms of such documents are expressly consistent with the terms of this Agreement.

34.     <u>Subordination Agreement</u>. This Agreement constitutes a subordination agreement for purposes of the Bankruptcy Code.

[Signature Pages to Follow]

The parties hereto have executed this Subordination and Intercreditor Agreement as of the date first above written.

SENIOR AGENT:                          **BMO HARRIS BANK N.A.**


By:
Name: Brij Grewal
Title:  Managing Director

[Signature Page to Subordination and Intercreditor Agreement]

SUBORDINATED AGENT:                    **LEADENHALL CAPITAL PARTNERS LLP**

By: _____
Name:  Craig Gillespie
Title:    Head of Life & Alternative Credit Portfolio Management


**LEADENHALL LIFE SMA III ICAV**
through its agent, Leadenhall Capital Partners LLP,

By: _____
Name:  Craig Gillespie
Title:    Head of Life & Alternative Credit Portfolio Management

Signature Page to Subordination and Intercreditor Agreement

SUBORDINATED HOLDERS:                    **LEADENHALL LIFE II DAC,**
through its agent, Leadenhall Capital Partners LLP,

By: _____
Name: Craig Gillespie
Title:  Head of Life & Alternative Credit Portfolio Management


**LEADENHALL LIFE SMA III ICAV,**
through its agent, Leadenhall Capital Partners LLP,

By: _____
Name: Craig Gillespie
Title:  Head of Life & Alternative Credit Portfolio Management


**LEADENHALL LIFE IV DAC,**
through its agent, Leadenhall Capital Partners LLP,

By: _____
Name: Craig Gillespie
Title:  Head of Life & Alternative Credit Portfolio Management


**SITKA ICAV,**
through its agent, Leadenhall Capital Partners LLP,

By: _____
Name: Craig Gillespie
Title:  Head of Life & Alternative Credit Portfolio Management

Signature Page to Subordination and Intercreditor Agreement

COMPANIES:

**777 PARTNERS LLC**

By: _____

Name: Steven W. Pasko

Title: Co-Managing Partner


**MTCP  LLC**

By: _____

Name: Steven W. Pasko

Title: Manager


**BRICKELL INSURANCE HOLDINGS LLC**

By: _____

Name: Steven W. Pasko

Title: Chief Executive Officer


[Signature Page to Subordination and Intercreditor Agreement]

ANNEX I
NOTICE ADDRESSES

Senior Agent:                                   BMO Harris Bank N.A.
                                                111 West Monroe Street
                                                Chicago, Illinois  60603
                                                Attn: Brij Grewal
                                                E-mail: Brij.Grewal@bmo.com


With a copy
(which shall not constitute notice) to:         Mayer Brown LLP
                                                71 South Wacker Drive
                                                Chicago, IL 60606
                                                Attn: Jennifer A. Kratochvil
                                                E-mail:  JKratochvil@mayerbrown.com


Subordinated Agent:                             Leadenhall Capital Partners LLP
                                                Level 15, 70 Mark Lane
                                                London EC3R 7NQ
                                                Attn: Life Portfolio Management / Operations
                                                E-mail: LifeTeam@leadenhallcp.com /
                                                LCP.Operations@leadenhallcp.com


With a copy
 (which shall not constitute notice) to:        Linklaters LLP
                                                1290 Avenue of the Americas
                                                New York, NY 10104
                                                Attn: Philip W. Lee
                                                E-mail: philip.w.lee@linklaters.com


777 Partners, MTCP and Companies:               Brickell Insurance Holdings LLC
                                                600 Brickell Avenue, 19th Floor
                                                Miami, FL 33131
                                                Attn:  Gayle Levy, General Counsel
                                                Telephone: 305-921-2801
                                                E-mail: glevy@brickell-insurance.com


With a copy to:                                 777 Partners LLC
                                                600 Brickell Avenue, 19th Floor
                                                Miami, FL 33131
                                                Attention: Legal Department
                                                Email: legalnotices@777part.com