# EXHIBIT E

*EXECUTION VERSION*

## AMENDMENT TO FORBEARANCE AGREEMENT

THIS AMENDMENT TO FORBEARANCE AGREEMENT (this "***Amendment***"), dated as of October 6, 2023 amends the Third Amendment to Credit Agreement, Consent and Forbearance Agreement, dated as of September 27, 2023 (the "***Forbearance Agreement***"), by and among Brickell Insurance Holdings LLC, a Delaware limited liability company (the "***Borrower***"), 777 Partners LLC, a a Delaware limited liability company (the "***Guarantor***"), BMO Bank N.A. (formerly known as BMO Harris Bank N.A.), a national banking association, as administrative agent (the "***Administrative Agent***"), and various financial institutions party to the Credit Agreement (as defined below) (the "***Lenders***").

WHEREAS, reference is made to the Credit Agreement, dated as of June 30, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "***Credit Agreement***") among the Borrower, the Lenders, and the Administrative Agent; capitalized terms used herein and not otherwise defined shall have the meanings given such terms in the Credit Agreement; and

WHEREAS, the Borrower desires that the Forbearance Agreement be amended on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), the parties hereto agree as follows:

1. <u>AMENDMENTS</u>. Subject to the terms and conditions of this Amendment, Administrative Agent and the Lenders hereby agree to the following amendments to the Forbearance Agreement subject to the provisions of Section 2 hereof.

    (a)    Section 2.4(e) of the Forbearance Agreement is hereby amended and restated in its entirety as follows:

        (e)    Promptly upon receipt of the Net Cash Proceeds of the Merit Sale, the Borrower shall apply the Net Cash Proceeds to the payment of the following obligations:

            (i)    <u>first</u>, to pay all legal costs and expenses required to be paid (A) by Borrower pursuant to Section 11.13 of the Credit Agreement and (B) by Guarantor pursuant to Section 9.4 of the Subordinated Note Purchase Agreement (as defined in the Intercreditor Agreement);

            (ii)    <u>second</u>, if necessary, to deposit cash into the Reserve Account so that the amount in the Reserve Account is at least equal to $11,250,000;

            (iii)    <u>third</u>, to payment of outstanding cash interest (but excluding interest accrued at the Default Rate) (as defined in the Subordinated Debt Documents)) owed under the Subordinated Debt Documents for the periods ending June 30, 2023, September 30, 2023, and December 31, 2023;

            (iv)    <u>fourth</u>, to payment of that portion of the Obligations constituting unpaid principal of the Loans, ratably among the Lenders in proportion to the respective amounts payable to them under the Credit Agreement; and

(v) <u>fifth</u>, if the Minimum Reserve Amount has been reduced to an amount less than $11,250,000 pursuant to Section 6.13 of the Credit Agreement, the excess amount in the Reserve Account will be used to pay that portion of the Obligations constituting unpaid principal of the Loans, ratably among the Lenders in proportion to the respective amounts payable to them under the Credit Agreement.

(b) Item 3 of Schedule I to the Forbearance Agreement is amended by inserting "and 8.1(c)" immediately following "8.1(b)."

2. <u>CONDITIONS PRECEDENT</u>.  This Amendment shall become effective on the date that each of the conditions precedent set forth in this <u>Section 2</u> shall have been satisfied, and notice thereof shall have been given by the Administrative Agent to the Borrower and the Required Lenders.

2.1 <u>Receipt of Documents</u>.  The Administrative Agent shall have received this Amendment duly executed by the Borrower, the Guarantor, the Administrative Agent, and the Required Lenders.

2.2 <u>Compliance with Warranties, No Default, etc</u>.  After giving effect to this Amendment, the following statements by the Borrower shall be true and correct (and the Borrower, by its execution of this Agreement, hereby represents and warrants to the Administrative Agent and each Lender that such statements are true and correct as at such times):

(a) the representations and warranties set forth in Section 5 of the Credit Agreement and in the other Loan Documents are true and correct in all material respects as of the date hereof (other than as they specifically relate to the Specified Events of Default (as defined in the Forbearance Agreement)), except to the extent the same expressly relate to an earlier date, in which case such representations and warranties shall be and remain true and correct as of such earlier date, and except to the extent any representation and warranty is qualified by "material", "Material Adverse Effect" or similar language, in which case, such representation and warranty shall be true and correct in all respects; and

(b) no Default or Event of Default (other than the Specified Events of Default (as defined in the Forbearance Agreement)) has occurred and is continuing.

3. <u>MISCELLANEOUS</u>.

3.1 <u>Continuing Effectiveness, etc</u>.  This Amendment shall be strictly limited to its terms.  In this Amendment, the Lenders waive no Default or Event of Default (including the Specified Events of Default (as defined in the Forbearance Agreement)), whether presently or subsequently existing.  Except as otherwise expressly provided for herein (including the Forbearance (as defined in the Forbearance Agreement)), the Administrative Agent and the Lenders hereby fully preserve all of their rights, powers and remedies against the Loan Parties and any other Person or such Person's property, including the right to act immediately upon the occurrence of any Default or Event of Default other than the Specified Events of Default (as defined in the Forbearance Agreement).  In addition, and except solely as provided herein (including the Forbearance (as defined in the Forbearance Agreement)), nothing contained herein shall be deemed to be a waiver or abandonment of any Default or Event of Default (including the Specified Events of Default) or of any right, power or remedy available to the Administrative Agent or any Lender under any Loan Document, applicable law or otherwise, whether against any Loan Party or any other Person, and each such right, power and remedy is hereby specifically and expressly reserved, whether any such right, power or remedy relates to any obligation incurred or property transferred before the date of this Amendment, during the Forbearance Period (as defined in the Forbearance Agreement), or

subsequent to the occurrence of any Forbearance Default (as defined in the Forbearance Agreement), including the right to seek judgment against any Loan Party, to foreclose its interest in any Collateral held by the Administrative Agent or in which the Administrative Agent has a security interest or other lien or to take any other action permitted under the Loan Documents and applicable law.  This Amendment shall be deemed to be (i) an amendment to the Forbearance Agreement, and the Forbearance Agreement as amended hereby, shall remain in full force and effect and is hereby ratified, approved and confirmed in each and every respect and (ii) a Loan Document, and each other Loan Document is hereby ratified, approved and confirmed in each and every respect.  After the effectiveness of this Amendment in accordance with its terms, all references to the Forbearance Agreement in the Loan Documents or in any other document, instrument, agreement or writing shall be deemed to refer to the Forbearance Agreement as amended hereby.  Except as expressly modified in this Amendment, all of the terms, provisions and conditions of the Forbearance Agreement, as heretofore amended, shall remain unchanged and in full force and effect.

       3.2      <u>Headings</u>.  Section headings used in this Amendment are for reference only and shall not affect the construction of this Amendment.

       3.3      <u>Execution in Counterparts</u>.  This Amendment may be executed in any number of counterparts, and by the different parties hereto on separate counterpart signature pages, each of which shall constitute an original, and all such counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Amendment by telecopy, emailed .pdf or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart of this Amendment and such counterpart shall be deemed to be an original hereof.

       3.4      <u>Incorporation of Credit Agreement Provisions</u>.  The provisions of Sections 1.2, 11.13, 11.16, 11.17, 11.21 and 11.22 of the Credit Agreement are incorporated herein by reference as if fully set forth herein, *mutatis mutandis*.

       4.      RELEASE; INDEMNIFICATION.

       4.1      <u>Release</u>. In further consideration of the Administrative Agent's and the Lenders' execution of this Amendment, each Loan Party, individually and on behalf of its successors (including any trustees acting on behalf of such Loan Party, and any debtor-in-possession with respect to such Loan Party), assigns, subsidiaries and affiliates, hereby forever releases the Administrative Agent, each Lender and each of their respective successors, assigns, parents, subsidiaries, and affiliates, officers, employees, directors, agents and attorneys (collectively, the "***Releasees***") from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions and causes of actions (whether at law or in equity), and obligations of every nature whatsoever, whether liquidated or unliquidated, whether matured or unmatured, whether fixed or contingent that each Loan Party has or may have against the Releasees, or any of them, which arise from or relate to any actions which the Releasees, or any of them, have or may have taken or omitted to take in connection with the Forbearance Agreement or the other Loan Documents prior to the date hereof (including with respect to the Obligations, any Collateral and any third parties liable in whole or in part for the Obligations). This provision shall survive and continue in full force and effect whether or not the Loan Parties shall satisfy all other provisions of the Forbearance Agreement (as amended by this Amendment) or the other Loan Documents.

       4.2      <u>Related Indemnity</u>. Each Loan Party hereby agrees that its release of the Releasees set forth in <u>Section 4.1</u> shall include an obligation to indemnify and hold the Releasees, or any of them, harmless with respect to any and all liabilities, obligations, losses, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by the Releasees, or any of

them, whether direct, indirect or consequential, as a result of or arising from or relating to any proceeding by, or on behalf of any Person, including officers, directors, agents, trustees, creditors, partners or shareholders of such Loan Party or any parent, subsidiary or affiliate of such Loan Party, whether threatened or initiated, asserting any claim for legal or equitable remedy under any statutes, regulation, common law principle or otherwise arising from or in connection with the negotiation, preparation, execution, delivery, performance, administration and enforcement of this Amendment or any other document executed in connection herewith; provided, that no Loan Party shall be liable for any indemnification to a Releasee to the extent that any such liability, obligation, loss, penalty, action, judgment, suit, cost, expense or disbursement results from the applicable Releasee's gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction. The foregoing indemnity shall survive the payment in full of the Obligations and the termination of the Credit Agreement and the other Loan Documents (in each case as amended by this Amendment).

5.     DEFAULT INTEREST. The Company hereby acknowledges and agrees that (i) certain of the Specified Events of Default (as defined in the Forbearance Agreement) occurred and have been continuing since June 30, 2022 and (ii) notwithstanding anything to the contrary in the Credit Agreement or any other Loan Document, interest on the outstanding amount of the Loans shall be deemed to have accrued at the Default Rate and in accordance with Section 2.8 of the Credit Agreement for the period commencing on June 30, 2022 and shall continue to accrue at the Default Rate and in accordance with such Section for such period as provided in the Credit Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

*"Borrower"*

**BRICKELL INSURANCE HOLDINGS LLC**, as Borrower

By _____
Name  Steven W. Pasko
Title  Manager

*"Guarantor"*

**777 PARTNERS LLC**, as Guarantor

By _____
Name  Steven W. Pasko
Title  Manager

*"Administrative Agent"*

**BMO BANK N.A.**, as Administrative Agent

By _____
   Name Brij Grewal
   Title Managing Director

*"Lenders"*

**BMO BANK N.A.**, as Lender

By _____
   Name Brij Grewal
   Title Managing Director

*Amendment to Forbearance Agreement*