# EXHIBIT G



August 21, 2023

Leadenhall Capital Partners LLP
Level 15, 70 Mark Lane
London EC3R 7NQ
Attn: Life Portfolio Management / Operations
E-mail: LifeTeam@leadenhallcp.com / LCP.Operations@leadenhallcp.com

Re:   <u>Notice of Default; Reservation of Rights</u>

Ladies/Gentlemen:

Please refer to the Subordination and Intercreditor Agreement, dated as of June 30, 2022 (as amended, restated, supplemented or otherwise modified, the "<u>Intercreditor Agreement</u>"), by and among BMO HARRIS BANK N.A., as Administrative Agent under the hereinafter described Senior Credit Agreement, LEADENHALL CAPITAL PARTNERS LLP, as the administrative agent for the Subordinated Holders (the "<u>Subordinated Administrative Agent</u>"), LEADENHALL LIFE SMA III ICAV, as the collateral agent for the Subordinated Holders (the "<u>Subordinated Collateral Agent</u>"), each subordinated holder party thereto from time to time (the "<u>Subordinated Holders</u>", and together with the Subordinated Administrative Agent and the Subordinated Collateral Agent, each individually a "<u>Subordinated Party</u>", and collectively, the "<u>Subordinated Parties</u>"), Brickell Insurance Holdings LLC, a Delaware limited liability company (the "<u>Borrower</u>"), 777 Partners LLC, a Delaware limited liability company and MTCP LLC, a Florida limited liability company.

Please also refer to the Credit Agreement (as amended, restated, supplemented or otherwise modified, the "<u>Senior Credit Agreement</u>"; capitalized terms used herein without definition shall have the definition given such term in the Senior Credit Agreement), dated as of June 30, 2022, by and among the Borrower, the Lenders party thereto, and BMO Harris Bank N.A., a national banking association, as administrative agent (the "<u>Senior Agent</u>").

As you know, certain Events of Default have occurred and are continuing under the terms of the Senior Credit Agreement, including, without limitation, those described on <u>Schedule I</u> hereto (each individually, an "<u>Existing Default</u>" and collectively, the "<u>Existing Defaults</u>").  As you also know, any cash interest or principal payments made in respect of the Subordinated Debt while an Event of Default under the Senior Credit Agreement has occurred and is continuing is not a "Permitted Payment" (as defined in the Intercreditor Agreement) and, pursuant to Section 6 of the Intercreditor Agreement, the Companies are prohibited from making such payments and the Subordinated Parties are prohibited from accepting any such payments.

As a result of the Existing Defaults, you are hereby notified that (a) pursuant to <u>Section 6</u> of the Intercreditor Agreement, the Subordinated Holders remain prohibited from accepting any additional cash interest or principal payments in respect of the Subordinated Debt and (b) pursuant to <u>Section 13</u> of the Intercreditor Agreement, (i) to the extent that any prohibited payments are received, the Subordinated Holders are obligated to hold such payments in trust, to not commingle such payments with any other assets and to promptly pay over and deliver to the Senior Agent any

such prohibited payments and (ii) the Senior Agent may demand specific performance under the Intercreditor Agreement, whether or not the Subordinated Parties or the Companies have complied, and may exercise any other remedy available at law or equity.

In addition to the foregoing, we remind you that no temporary forbearance by the Senior Agent (in its sole discretion) of any rights or remedies of the Senior Agent, nor any delay or omission of the Senior Agent (in its sole discretion) to exercise any right under the Intercreditor Agreement nor anything in this letter or any other communication or in any ongoing discussions or negotiations which have or may take place between the Senior Agent and the Subordinated Parties shall directly or indirectly (a) create any obligation to defer or forbear from any enforcement action, (b) constitute or be construed as a consent or waiver of any past, present or future violation of any provision of the Intercreditor Agreement, (c) amend, modify or operate as a waiver of any provision of the Intercreditor Agreement or any right, power, privilege or remedy of Senior Agent thereunder, or (d) constitute a course of dealing or other basis for altering any obligations of any Subordinated Party or any other Person under the Intercreditor Agreement or any other contract or instrument.

The Senior Agent, on behalf of itself and each of the Senior Lenders, hereby expressly reserves all rights, powers, privileges and remedies of the Senior Agent and/or each of the Senior Lenders under the Intercreditor Agreement, the other Loan Documents and/or applicable Law, including, without limitation, their rights at any time, as applicable, and without further notice, to exercise any or all rights and remedies provided for by the Intercreditor Agreement, any other Loan Document, or applicable Law.  All such rights, powers, privileges and remedies are cumulative and without limitation of any other available rights, powers, privileges and remedies. No oral representations or course of dealing on the part of the Senior Agent or any of the Senior Lenders, or any of their respective officers, employees, attorneys or agents, and no failure or delay by the Senior Agent or any of the Senior Lenders with respect to the exercise of any right, power, privilege or remedy of the Senior Agent and/or any Senior Lender under the Intercreditor Agreement, any other Loan Document or applicable Law shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy.

This letter shall be governed by and construed and determined in accordance with the internal laws of the State of New York.

[Remainder of page intentionally left blank]

Please do not hesitate to contact the undersigned with any questions regarding the above matters.

**BMO HARRIS BANK N.A.**, as Senior Agent

By: _____
Name: Nair Raghu
Title:  Director


cc:

Linklaters LLP
1290 Avenue of the Americas
New York, NY 10104
Attn: Philip W. Lee
E-mail: philip.w.lee@linklaters.com

Reservation of Rights (Leadenhall)

SCHEDULE I

EXISTING DEFAULTS

1. Certain Events of Default exist under Section 8.1(a)(ii) of the Senior Credit Agreement as a result of the Borrower's failure to timely pay to the Senior Agent, for the benefit of the Lenders, the interest payments on the Loans which became due and payable on each Interest Payment Date of August 29, 2022, September 29, 2022, October 31, 2022 and June 29, 2023, in violation of Section 2.2 of the Senior Credit Agreement, and the continuance of such failures for three or more Business Days after the applicable due dates therefor.

2. Certain Events of Default exist under Section 8.1(b) of the Senior Credit Agreement as a result of the Borrower making unpermitted interest payments in respect of the Subordinated Debt (which are not permitted during the existence of any Event of Default).

3. Certain Events of Default exist under Section 8.1(b) of the Senior Credit Agreement as a result of the Borrower entering into and providing a secured guaranty pursuant to that certain Second Amended and Restated Revolving Loan and Security Agreement dated as of February 17, 2022 (the "SILAC Loan and Security Agreement"), by and among SILAC Insurance Company, 777 Partners LLC, as the borrower, and the Borrower, as the guarantor, in violation of Sections 7.1, 7.2, 7.7 and 7.11 of the Senior Credit Agreement.

4. Certain Events of Defaults exist under Section 8.1(c) of the Senior Credit Agreement as a result of the Borrower granting a first priority Lien on certain Collateral pursuant to the SILAC Loan and Security Agreement in violation of the Security Agreement, and the continuance of such failures for thirty (30) or more days.

5. Certain Events of Default exist under Section 8.1(d) of the Senior Credit Agreement as a result of the Borrower's breaches of the representations and warranties set forth in Section 5.14, Section 5.21 and Section 5.26 of the Senior Credit Agreement, solely to the extent breached due to the other Events of Default described in this Schedule I and the underlying facts and circumstances.

6. An Event of Default exists under Section 8.1(e) of the Senior Credit Agreement as a result of the Borrower pledging investment account number 142212-000 to SILAC Insurance Company as collateral for the guaranty of the Borrower under the SILAC Loan and Security Agreement, in violation of Section 6.11 of the Senior Credit Agreement.

7. Certain Events of Default exist under Section 8.1(f) of the Senior Credit Agreement as a result of each of the other Events of Default described herein and the underlying facts and circumstances, in each case to the extent constituting an "Event of Default" under the Subordinated Debt Documents.

8. A potential Event of Default may have occurred and be continuing under Section 8.1(c) of the Senior Credit Agreement to the extent that 777 Partners LLC pledged its equity interest in the Borrower to Balanced Management, LLC and authorized Balanced Management,

LLC to file UCC-1 financing statements relating to the 777 Partners LLC's equity interest in the Borrower