# EXHIBIT H

Case 1:25-cv-10476-JMF    Document 1-8    Filed 12/17/25    Page 1 of 8

October 6, 2023

Leadenhall Capital Partners LLP
Level 15, 70 Mark Lane
London EC3R 7NQ
Attn: Life Portfolio Management / Operations
E-mail: LifeTeam@leadenhallcp.com / LCP.Operations@leadenhallcp.com

Re:   Waiver Agreement

Ladies/Gentlemen:

Please refer to (a) the Subordination and Intercreditor Agreement, dated as of June 30, 2022 (as amended, restated, supplemented or otherwise modified, the "Intercreditor Agreement"), by and among BMO Bank N.A. (formerly known as BMO Harris Bank N.A.), as Administrative Agent under the hereinafter described Senior Credit Agreement (the "Senior Agent"), Leadenhall Capital Partners LLP, as the administrative agent for the Subordinated Holders (the "Subordinated Administrative Agent"), Leadenhall Life SMA III ICAV, as the collateral agent for the Subordinated Holders (the "Subordinated Collateral Agent"), each subordinated holder party thereto from time to time (the "Subordinated Holders", and together with the Subordinated Administrative Agent and the Subordinated Collateral Agent, each individually a "Subordinated Party", and collectively, the "Subordinated Parties"), Brickell Insurance Holdings LLC, a Delaware limited liability company (the "Borrower"), 777 Partners LLC, a Delaware limited liability company ("777 Partners"), and MTCP LLC, a Florida limited liability company ("MTCP", and collectively with the Borrower and 777 Partners, the "Companies"), (b) the Credit Agreement (as amended, restated, supplemented or otherwise modified, including pursuant to the Senior Amendment and Forbearance Agreement (defined below), the "Senior Credit Agreement"), dated as of June 30, 2022, by and among the Borrower, the Lenders party thereto (the "Senior Lenders"), and the Senior Agent, (c) the Third Amendment to Credit Agreement, Consent and Forbearance Agreement, dated as of September 27, 2023 (as amended by the Amendment to Forbearance Agreement, dated as of October 6, 2023, the "Senior Amendment and Forbearance Agreement"), by and among the Borrower, the Senior Lenders party thereto and the Senior Agent, (d) the First Amendment to Subordinated Note Purchase Agreement, Consent and Forbearance Agreement, dated as of October 6, 2023 (the "Subordinated Amendment and Forbearance Agreement"), by and among 777 Partners, the Subordinated Administrative Agent and the Subordinated Holders and (e) that certain letter regarding Notice of Default; Reservation of Rights from the Senior Agent to the Subordinated Parties dated and delivered on August 21, 2023 (the "Notice of Default").  Capitalized terms used but not defined herein have the meanings given such terms in the Intercreditor Agreement.

The parties hereto acknowledge and agree that: (a) pursuant to Section 6(c) of the Intercreditor Agreement, a payment made with respect to the Subordinated Indebtedness is deemed to constitute a representation by 777 Partners and the Borrower that no Senior Default exists or would result therefrom and that such payment is otherwise permitted by Section 6 of the Intercreditor Agreement, (b) certain cash interest payments, in an aggregate amount of $3,963,915.03 (collectively, the "Specified Payments"), were made in respect of the Subordinated Indebtedness

while one or more Senior Defaults had occurred and were continuing, (c) as a result of such continuing Senior Defaults, none of such Specified Payments was a Permitted Payment, and instead, pursuant to Section 6 of the Intercreditor Agreement, the Companies were prohibited from making, and the Subordinated Parties were prohibited from accepting, each of the Specified Payments at the time when made and (d) pursuant to Section 13 of the Intercreditor Agreement, any payments made under the Subordinated Indebtedness in contravention of the Intercreditor Agreement are required to be held in trust, and not commingled with any other assets, and to promptly be paid over and delivered to the Senior Agent (on behalf of the Senior Lenders).

Subject to the terms of this letter agreement, the Senior Agent (on behalf of itself and the Senior Lenders) hereby (i) agrees that notwithstanding Section 13 of the Intercreditor Agreement, the Specified Payments shall not be required to be held in trust by any Subordinated Holder, nor shall any portion of the Specified Payments be required to be paid over or delivered to the Senior Agent or any Senior Lender prior to (A) the Stated Termination Date (as defined in the Senior Amendment and Forbearance Agreement) or (B) if an extension of 30 additional days is granted pursuant to Section 2.4(a) of the Senior Amendment and Forbearance Agreement, the Required Merit Sale Date (as defined in the Senior Amendment and Forbearance Agreement) and (ii) effective solely upon the earlier to occur of (x) Borrower's sale of substantially all of the assets of Merit Life Insurance Co. and the distribution of the Net Cash Proceeds of such sale in accordance with the terms of the Senior Amendment and Forbearance Agreement and (y) each "Specified Event of Default" described in the Senior Amendment and Forbearance Agreement and the Subordinated Amendment and Forbearance Agreement being waived in writing in accordance with the terms of the Senior Credit Agreement and the Subordinated Note Purchase Agreement, as applicable, waives its rights and remedies under the Intercreditor Agreement (including its right to specific performance under the Intercreditor Agreement) solely with respect to the Specified Payments. The parties hereto further agree that, effective upon the waiver set forth in clause (ii) above, any breach of Section 6(a) of the Intercreditor Agreement as a result of any Specified Payment having been made by any Company and received by the Subordinated Parties shall be deemed to be remedied or waived. The parties hereto agree that the limited waiver set forth in this paragraph shall be limited precisely as written and, except as expressly set forth in this paragraph, shall not be deemed to be a consent to any amendment, waiver or modification of any other term or condition of the Intercreditor Agreement.

The limited waiver and other agreements set forth in this letter agreement shall become effective upon the receipt by the Senior Agent of (a) a fully executed copy of this letter agreement, (b) confirmation that all conditions to effectiveness under the Senior Amendment and Forbearance Agreement have been satisfied and the Senior Amendment and Forbearance Agreement is effective, (c) a fully executed copy of the Subordinated Amendment and Forbearance Agreement, together with confirmation that all conditions to effectiveness thereunder have been satisfied and the Subordinated Amendment and Forbearance Agreement is effective, and (d) the Borrower's sale of substantially all of the assets of Merit Life Insurance Co. and the distribution of the Net Cash Proceeds of such sale in accordance with the terms of the Senior Amendment and Forbearance Agreement.

The parties hereto hereby agree that all of the terms, provisions and conditions of the Intercreditor Agreement shall remain unchanged and in full force and effect and are hereby ratified

and confirmed in all respects. The parties hereto agree and acknowledge that (a) the Senior Agent's Lien in the equity interests and assets of the Borrower is a valid and enforceable Lien and such Lien has priority over any Lien of the Subordinated Holders in such Company Property, (b) the Subordinated Holders' Lien in the equity interests of the Borrower is a valid and enforceable Lien and such Lien is subordinated to the Senior Agent's Lien pursuant to the Intercreditor Agreement, and (c) the Subordinated Holders do not hold any Lien in any Company Property other than the Lien described in clause (b) of this sentence. Neither the execution, delivery and effectiveness of this letter agreement nor any other communication or any ongoing discussions or negotiations which have or may take place between the Senior Agent and the Subordinated Parties shall directly or indirectly (a) create any obligation to defer or forbear from any enforcement action, except as specifically set forth herein, (b) constitute or be construed as a consent or waiver of any past, present or future violation of any provision of the Intercreditor Agreement, except as specifically set forth herein, (c) amend, modify or operate as a waiver of any provision of the Intercreditor Agreement or any right, power, privilege or remedy of Senior Agent thereunder, except as specifically set forth herein or (d) constitute a course of dealing or other basis for altering any obligations of any Subordinated Party or any other Person under the Intercreditor Agreement or any other contract or instrument.

This letter agreement may be executed in any number of counterparts, and by the different parties hereto on separate counterpart signature pages, each of which shall constitute an original, and all such counterparts taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this letter agreement by telecopy, electronic signature (e.g. DocuSign), emailed .pdf or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart of this letter agreement and such counterpart shall be deemed to be an original hereof.

This letter agreement shall be governed by and construed and determined in accordance with the internal laws of the State of New York.

[Remainder of page intentionally left blank]

757098932 22707135

Very Truly Yours,

**BMO BANK N.A.**, as Senior Agent

By _____
Name Brij Grewal
Title Managing Director

[Signature Page to Letter Agreement]

Acknowledged and Agreed:

SUBORDINATED
ADMINISTRATIVE AGENT:              **LEADENHALL CAPITAL PARTNERS LLP**

By: /s/ Craig Gillespie
Name: Craig Gillespie
Title: Head of Life & Alternative Credit Portfolio Management

SUBORDINATED
COLLATERAL AGENT:              **LEADENHALL LIFE SMA III ICAV,**
through its agent, Leadenhall Capital Partners LLP,

By: /s/ Craig Gillespie
Name: Craig Gillespie
Title: Head of Life & Alternative Credit Portfolio Management

[Signature Page to Letter Agreement]

| | |
|---|---|
| SUBORDINATED HOLDERS: | **LEADENHALL LIFE II DAC,** through its agent, Leadenhall Capital Partners LLP, |

By: /s/ Craig Gillespie
Name: Craig Gillespie
Title: Head of Life & Alternative Credit Portfolio Management

**LEADENHALL LIFE SMA III ICAV,**
through its agent, Leadenhall Capital Partners LLP,

By: /s/ Craig Gillespie
Name: Craig Gillespie
Title: Head of Life & Alternative Credit Portfolio Management

**LEADENHALL LIFE IV DAC,**
through its agent, Leadenhall Capital Partners LLP,

By: /s/ Craig Gillespie
Name: Craig Gillespie
Title: Head of Life & Alternative Credit Portfolio Management

**SITKA ICAV,**
through its agent, Leadenhall Capital Partners LLP,

By: /s/ Craig Gillespie
Name: Craig Gillespie
Title: Head of Life & Alternative Credit Portfolio Management

[Signature Page to Letter Agreement]

Acknowledged and Agreed:

COMPANIES:

**777 PARTNERS LLC**

By: _/s/ Steven W. Pasko_
Name: Steven W. Pasko
Title: Co-Managing Partner

**MTCP, LLC**

By: _/s/ Steven W. Pasko_
Name: Steven W. Pasko
Title: Manager

**BRICKELL INSURANCE HOLDINGS LLC**

By: _/s/ Steven W. Pasko_
Name: Steven W. Pasko
Title: Manager

[Signature Page to Letter Agreement]