# EXHIBIT I



July 30, 2024

Leadenhall Capital Partners LLP
Level 15, 70 Mark Lane
London EC3R 7NQ
Attn: Life Portfolio Management / Operations
E-mail: LifeTeam@leadenhallcp.com / LCP.Operations@leadenhallcp.com

Re:     Payment Demand under the Intercreditor Agreement

Ladies/Gentlemen:

Reference is made to that certain Subordination and Intercreditor Agreement, dated as of June 30, 2022 (as amended, restated, supplemented or otherwise modified, the "Intercreditor Agreement"), by and among BMO Bank N.A. (formerly known as BMO Harris Bank N.A.), as Administrative Agent under the Senior Credit Agreement (the "Senior Agent"), Leadenhall Capital Partners LLP, as the administrative agent for the Subordinated Holders (the "Subordinated Administrative Agent"), Leadenhall Life SMA III ICAV, as the collateral agent for the Subordinated Holders (the "Subordinated Collateral Agent"), each subordinated holder party thereto from time to time (the "Subordinated Holders", and together with the Subordinated Administrative Agent and the Subordinated Collateral Agent, each individually a "Subordinated Party", and collectively, the "Subordinated Parties"), Brickell Insurance Holdings LLC, a Delaware limited liability company (the "Borrower"), 777 Partners LLC, a Delaware limited liability company ("777 Partners"), and MTCP LLC, a Florida limited liability company ("MTCP"). Capitalized terms used but not defined herein have the meanings given such terms in the Intercreditor Agreement.

The Intercreditor Agreement addresses certain matters related to payment of the Subordinated Indebtedness held by the Subordinated Parties and collateral securing the Senior Indebtedness, including certain collateral that also secures the Subordinated Indebtedness. Pursuant to Section 6 of the Intercreditor Agreement, each of 777 Partners, MTCP, the Borrower and each other Company agreed not to make, and the Subordinated Agent agreed on behalf of itself and each Subordinated Holder, not to accept, any payment or distribution with respect to the Subordinated Indebtedness unless expressly permitted pursuant to the terms of that section. Section 6 permits the Subordinated Holders to accept receipt of Permitted Payments, which is a term defined to allow certain regularly scheduled payments of cash interest on the Subordinated Indebtedness so long as a Senior Default has not occurred or is continuing or would result from such payment(s).

As acknowledged by that certain letter agreement, dated as of October 6, 2023 (the "Letter Agreement"), by and among the Subordinated Parties, the Borrower, 777 Partners, MTCP and the Senior Agent, certain cash interest payments, in an aggregate amount of $3,963,915.03 (collectively, the "Specified Payments") were made in respect of the Subordinated Indebtedness while one or more Senior Defaults had occurred and were continuing and, thus, such Specified Payments were not Permitted Payments under Section 6 of the Intercreditor Agreement and the

Subordinated Parties were prohibited from accepting each of the Specified Payments at the time when made. The Subordinated Parties further acknowledged that, pursuant to Section 13 of the Intercreditor Agreement, any payments made under the Subordinated Indebtedness in contravention of the Intercreditor Agreement, including but not limited to the Specified Payments, are required to be held in trust, and not commingled with any other assets, and to promptly be paid over and delivered to the Senior Agent (on behalf of the Senior Lenders).

Pursuant to the Letter Agreement, the Senior Agent did not demand immediate turnover of the Specified Payments, but instead agreed that the Specified Payments could be held by the Subordinated Agent for an agreed period of time that related to an anticipated sale of Merit Life Insurance Co. ("Merit"). Subject to the terms of the Third Amendment to Credit Agreement, Consent and Forbearance Agreement, dated as of September 27, 2023 (as amended by the Amendment to Forbearance Agreement, dated as of October 6, 2023, the "Third Senior Amendment"), the Senior Agent had consented to a specific sale of Merit that would be on terms substantially the same as those set forth in a certain purchase agreement and would close on or prior to March 27, 2024, subject to a 30-day extension at the Borrower's option if necessary to obtain regulatory approvals.

This sale did not occur. Instead, by the time the "Required Merit Sale Date" (defined in the Third Senior Amendment as March 27, 2024) had passed, the Borrower had informed the Senior Agent that the sale of Merit pursuant to the applicable purchase agreement had terminated. The Borrower also did not request a 30-day extension of such date. Therefore, at such time, the Senior Agent's agreement that it would not require an immediate turnover of the Specified Payments had expired by its terms.

The Senior Agent had also agreed to waive its rights and remedies under the Intercreditor Agreement solely with respect to the Specified Payments if either (a) the Borrower consummated a sale of substantially all of the assets of Merit and the proceeds of such sale were distributed in accordance with the terms of the Third Senior Amendment or (b) the "Specified Events of Default" described in the Third Amendment and the First Amendment to Subordinated Note Purchase Agreement, Consent and Forbearance Agreement, dated as of October 6, 2023 (the "First Subordinated Amendment") were waived in writing in accordance with the terms of the applicable agreements.

The conditions to any waiver of the Senior Agent's rights under the Intercreditor Agreement, as acknowledged by the Subordinated Parties pursuant to the Letter Agreement, have not been and cannot be satisfied. Specifically, the Forbearance Period set forth in the Third Senior Amendment expired on the Stated Termination Date of March 27, 2024 at 5:00 p.m. New York City time and no extension was granted pursuant to Section 2.4(a) of the Third Senior Amendment. The sale of Merit was not consummated on or prior to the Required Merit Sale Date, nor was it effectuated pursuant to terms substantially the same as those set forth in the applicable purchase agreement, as such sale was terminated prior to the Required Merit Sale Date. Furthermore, the events of default identified by the Senior Agent under the Senior Credit Agreement, including but not limited to the Specified Events of Default described in the Third Senior Amendment, have not been waived and are continuing, and, to the Senior Agent's knowledge, the Subordinated Agent has not waived the events of default under the Subordinated Note Purchase Agreement, including but not limited to the Specified Events of Default described in the First Subordinated Amendment.

The Senior Agent previously notified the Subordinated Administrative Agent and Subordinated Collateral Agent of, and reserved its rights with respect to, the failure of the conditions precedent for its waiver relating to the Specified Payments and the expiration of its agreement to not immediately demand return of such amounts in that certain letter regarding Notice of Forbearance Termination; Reservation of Rights dated April 5, 2024.

The Senior Agent hereby demands that the Subordinated Parties comply with their obligations under the Intercreditor Agreement, including that (a) the Subordinated Holders promptly, and in any event no less than ten (10) Business Days from the date hereof, pay over and deliver to the Senior Agent, the Specified Payments and (b) to the extent that any other prohibited payments have been or are received, the Subordinated Holders hold any such prohibited payments in trust, and not comingle any such prohibited payments with any other assets, and promptly, and in any event no less than ten (10) Business Days from the date hereof or the date of receipt thereof, as the case may be, pay over and deliver to the Senior Agent any such prohibited payments, in each case in accordance with Section 13 of the Intercreditor Agreement. Any failure by the Subordinated Holders to promptly pay over and deliver to the Senior Agent the Specified Payments and any such other prohibited payments will leave the Senior Agent with no choice but to consider exercising any and all rights and remedies available to it with respect to the Specified Payments and any such other prohibited payments.

[Remainder of page intentionally left blank]

Regards,

**BMO BANK N.A.**, as Senior Agent

By: _/s/ Lauren Buysse_
Name:  Lauren Buysse
Title:   Managing Director


cc:

Paul Hastings LLP
71 S. Wacker Drive
45th Floor
Chicago, IL 60606
Attn:  Geoffrey M. King
E-mail:  geoffking@paulhastings.com

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Attn:  Leigh Nathanson
E-mail:  lnathanson@kslaw.com

[Signature Page to Payment Demand under the Intercreditor Agreement]